(Slip Opinion)     OCTOBER TERM, 2014     1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## HOLT, AKA MUHAMMAD *v.* HOBBS, DIRECTOR, ARKANSAS DEPARTMENT OF CORRECTION, ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 13–6827.   Argued October 7, 2014—Decided January 20, 2015

Section 3 of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) provides that "[n]o government shall impose a substantial burden on the religious exercise" of an institutionalized person unless the government demonstrates that the burden "is the least restrictive means of furthering [a] compelling governmental interest." 42 U. S. C. §2000cc–1(a).

Petitioner is an Arkansas inmate and devout Muslim who wishes to grow a ½-inch beard in accordance with his religious beliefs. Respondent Arkansas Department of Correction (Department) prohibits its prisoners from growing beards, with the single exception that inmates with diagnosed skin conditions may grow ¼-inch beards. Petitioner sought an exemption on religious grounds and, although he believes that his faith requires him not to trim his beard at all, he proposed a compromise under which he would be allowed to maintain a ½-inch beard. Prison officials denied his request, and petitioner sued in Federal District Court. At an evidentiary hearing before a Magistrate Judge, Department witnesses testified that beards compromised prison safety because they could be used to hide contraband and because an inmate could quickly shave his beard to disguise his identity. The Magistrate Judge recommended dismissing petitioner's complaint, emphasizing that prison officials are entitled to deference on security matters and that the prison permitted petitioner to exercise his religion in other ways. The District Court adopted the recommendation in full, and the Eighth Circuit affirmed, holding that the Department had satisfied its burden of showing that the grooming policy was the least restrictive means of furthering its compelling security interests, and reiterating that courts should defer to prison

officials on matters of security.

*Held*: The Department's grooming policy violates RLUIPA insofar as it
prevents petitioner from growing a ½-inch beard in accordance with
his religious beliefs.  Pp. 6–16.

    (a) Under RLUIPA, the challenging party bears the initial burden
of proving that his religious exercise is grounded in a sincerely held
religious belief, see *Burwell* v. *Hobby Lobby Stores, Inc.*, 573 U. S.
\_\_\_, \_\_\_, n. 28, and that the government's action substantially bur-
dens his religious exercise.  Here, petitioner's sincerity is not in dis-
pute, and he easily satisfies the second obligation.  The Department's
policy forces him to choose between "engag[ing] in conduct that seri-
ously violates [his] religious belie[f]," *id.,* at \_\_\_, or contravening the
grooming policy and risking disciplinary action.  In reaching the op-
posite conclusion, the District Court misunderstood the analysis that
RLUIPA demands.  First, the District Court erred by concluding that
the grooming policy did not substantially burden petitioner's reli-
gious exercise because he could practice his religion in other ways.
Second, the District Court erroneously suggested that the burden on
petitioner's religious exercise was slight because petitioner testified
that his religion would "credit" him for attempting to follow his reli-
gious beliefs, even if that attempt proved unsuccessful.  RLUIPA,
however, applies to religious exercise regardless of whether it is
"compelled."  §2000cc–5(7)(A).  Finally, the District Court improperly
relied on petitioner's testimony that not all Muslims believe that men
must grow beards.  Even if petitioner's belief were idiosyncratic,
RLUIPA's guarantees are "not limited to beliefs which are shared by
all of the members of a religious sect."  *Thomas* v. *Review Bd. of Indi-
ana Employment Security Div.*, 450 U. S. 707, 715–716.  Pp. 6–8.

    (b) Once the challenging party satisfies his burden, the burden
shifts to the government to show that substantially burdening the re-
ligious exercise of the "particular claimant" is "the least restrictive
means of furthering [a] compelling governmental interest."  *Hobby
Lobby, supra,* at \_\_\_; §2000cc–1(a).  The Department fails to show
that enforcing its beard prohibition against petitioner furthers its
compelling interests in preventing prisoners from hiding contraband
and disguising their identities.  Pp. 8–13.

    (i) While the Department has a compelling interest in regulating
contraband, its argument that this interest is compromised by allow-
ing an inmate to grow a ½-inch beard is unavailing, especially given
the difficulty of hiding contraband in such a short beard and the lack
of a corresponding policy regulating the length of hair on the head.
RLUIPA does not permit the unquestioning deference required to ac-
cept the Department's assessment.  See *Gonzales* v. *O Centro Espírita
Beneficente União do Vegetal*, 546 U. S. 418, 434.  Even if the De-

partment could show that denying petitioner a ½-inch beard furthers its interest in rooting out contraband, it would still have to show that its policy is the least restrictive means of furthering that interest, a standard that is "exceptionally demanding" and requires the government to "sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y]." *Hobby Lobby, supra,* at \_\_\_. Here, the Department fails to establish that its security concerns cannot be satisfied by simply searching a ½-inch beard. Pp. 9–11.

(ii) Even if the Department's grooming policy furthers its compelling interest in prisoner identification, its policy still violates RLUIPA as applied in the present circumstances. As petitioner argues, requiring inmates to be photographed both with and without beards and then periodically thereafter is a less restrictive means of solving the Department's identification concerns. The Department fails to show why its prison system is so different from the many institutions that allow facial hair that the dual-photo method cannot be employed at its institutions. It also fails to show why the security risk presented by a prisoner shaving a ½-inch beard is so different from the risk of a prisoner shaving a mustache, head hair, or ¼-inch beard. Pp. 11–13.

(c) In addition to the Department's failure to prove that petitioner's proposed alternatives would not sufficiently serve its security interests, the Department also fails to adequately explain the substantial underinclusiveness of its policy, since it permits ¼-inch beards for prisoners with medical conditions and more than ½ inch of hair on the head. Its failure to pursue its proffered objectives with regard to such "analogous nonreligious conduct" suggests that its interests "could be achieved by narrower ordinances that burdened religion to a far lesser degree." *Church of Lukumi Babalu Aye, Inc.* v. *Hialeah,* 508 U. S. 520, 546. Nor does the Department explain why the vast majority of States and the Federal Government can permit inmates to grow ½-inch beards, either for any reason or for religious reasons, but it cannot. Such evidence requires a prison, at a minimum, to offer persuasive reasons why it believes it must take a different course. See *Procunier* v. *Martinez,* 416 U. S. 396, 414, n. 14. Pp. 13–16.

509 Fed. Appx. 561, reversed and remanded.

ALITO, J., delivered the opinion for a unanimous Court. GINSBURG, J., filed a concurring opinion, in which SOTOMAYOR, J., joined. SOTOMAYOR, J., filed a concurring opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 13–6827

GREGORY HOUSTON HOLT, AKA ABDUL MAALIK MUHAMMAD, PETITIONER *v.* RAY HOBBS, DIRECTOR, ARKANSAS DEPARTMENT OF CORRECTION, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

[January 20, 2015]

JUSTICE ALITO delivered the opinion of the Court.

Petitioner Gregory Holt, also known as Abdul Maalik Muhammad, is an Arkansas inmate and a devout Muslim who wishes to grow a ½-inch beard in accordance with his religious beliefs. Petitioner's objection to shaving his beard clashes with the Arkansas Department of Correction's grooming policy, which prohibits inmates from growing beards unless they have a particular dermatological condition. We hold that the Department's policy, as applied in this case, violates the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 114 Stat. 803, 42 U. S. C. §2000cc *et seq.,* which prohibits a state or local government from taking any action that substantially burdens the religious exercise of an institutionalized person unless the government demonstrates that the action constitutes the least restrictive means of furthering a compelling governmental interest.

We conclude in this case that the Department's policy substantially burdens petitioner's religious exercise.

Although we do not question the importance of the Department's interests in stopping the flow of contraband and facilitating prisoner identification, we do doubt whether the prohibition against petitioner's beard furthers its compelling interest about contraband. And we conclude that the Department has failed to show that its policy is the least restrictive means of furthering its compelling interests. We thus reverse the decision of the United States Court of Appeals for the Eighth Circuit.

## I
### A

Congress enacted RLUIPA and its sister statute, the Religious Freedom Restoration Act of 1993 (RFRA), 107 Stat. 1488, 42 U. S. C. §2000bb *et seq.*, "in order to provide very broad protection for religious liberty." *Burwell* v. *Hobby Lobby Stores, Inc.*, 573 U. S. ___, ___ (2014) (slip op., at 4). RFRA was enacted three years after our decision in *Employment Div., Dept. of Human Resources of Ore.* v. *Smith*, 494 U. S. 872 (1990), which held that neutral, generally applicable laws that incidentally burden the exercise of religion usually do not violate the Free Exercise Clause of the First Amendment. *Id.*, at 878–882. *Smith* largely repudiated the method of analysis used in prior free exercise cases like *Wisconsin* v. *Yoder*, 406 U. S. 205 (1972), and *Sherbert* v. *Verner*, 374 U. S. 398 (1963). In those cases, we employed a balancing test that considered whether a challenged government action that substantially burdened the exercise of religion was necessary to further a compelling state interest. See *Yoder, supra*, at 214, 219; *Sherbert, supra*, at 403, 406.

Following our decision in *Smith*, Congress enacted RFRA in order to provide greater protection for religious exercise than is available under the First Amendment. See *Hobby Lobby, supra*, at ___ – ___ (slip op., at 5–6). RFRA provides that "[g]overnment shall not substantially

burden a person's exercise of religion even if the burden results from a rule of general applicability," unless the government "demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U. S. C. §§2000bb–1(a), (b). In making RFRA applicable to the States and their subdivisions, Congress relied on Section 5 of the Fourteenth Amendment, but in *City of Boerne* v. *Flores*, 521 U. S. 507 (1997), this Court held that RFRA exceeded Congress' powers under that provision. *Id.*, at 532–536.

Congress responded to *City of Boerne* by enacting RLUIPA, which applies to the States and their subdivisions and invokes congressional authority under the Spending and Commerce Clauses. See §2000cc–1(b). RLUIPA concerns two areas of government activity: Section 2 governs land-use regulation, §2000cc; and Section 3—the provision at issue in this case—governs religious exercise by institutionalized persons, §2000cc–1. Section 3 mirrors RFRA and provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." §2000cc–1(a). RLUIPA thus allows prisoners "to seek religious accommodations pursuant to the same standard as set forth in RFRA." *Gonzales* v. *O Centro Espírita Beneficente União do Vegetal*, 546 U. S. 418, 436 (2006).

Several provisions of RLUIPA underscore its expansive protection for religious liberty. Congress defined "religious exercise" capaciously to include "any exercise of

religion, whether or not compelled by, or central to, a system of religious belief." §2000cc–5(7)(A). Congress mandated that this concept "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." §2000cc–3(g). And Congress stated that RLUIPA "may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise." §2000cc–3(c). See *Hobby Lobby*, *supra*, at ___ – ___, ___ (slip op., at 6–7, 43).

### B

Petitioner, as noted, is in the custody of the Arkansas Department of Correction and he objects on religious grounds to the Department's grooming policy, which provides that "[n]o inmates will be permitted to wear facial hair other than a neatly trimmed mustache that does not extend beyond the corner of the mouth or over the lip." App. to Brief for Petitioner 11a. The policy makes no exception for inmates who object on religious grounds, but it does contain an exemption for prisoners with medical needs: "Medical staff may prescribe that inmates with a diagnosed dermatological problem may wear facial hair no longer than one quarter of an inch." *Ibid.* The policy provides that "[f]ailure to abide by [the Department's] grooming standards is grounds for disciplinary action." *Id.*, at 12a.

Petitioner sought permission to grow a beard and, although he believes that his faith requires him not to trim his beard at all, he proposed a "compromise" under which he would grow only a ½-inch beard. App. 164. Prison officials denied his request, and the warden told him: "[Y]ou will abide by [Arkansas Department of Correction] policies and if you choose to disobey, you can suffer the consequences." No. 5:11–cv–00164 (ED Ark., July 21, 2011), Doc. 13, p. 6 (Letter from Gaylon Lay to Gregory

Holt (July 19, 2011)).

Petitioner filed a *pro se* complaint in Federal District Court challenging the grooming policy under RLUIPA. We refer to the respondent prison officials collectively as the Department. In October 2011, the District Court granted petitioner a preliminary injunction and remanded to a Magistrate Judge for an evidentiary hearing. At the hearing, the Department called two witnesses. Both expressed the belief that inmates could hide contraband in even a ½-inch beard, but neither pointed to any instances in which this had been done in Arkansas or elsewhere. Both witnesses also acknowledged that inmates could hide items in many other places, such as in the hair on their heads or their clothing. In addition, one of the witnesses—Gaylon Lay, the warden of petitioner's prison—testified that a prisoner who escaped could change his appearance by shaving his beard, and that a prisoner could shave his beard to disguise himself and enter a restricted area of the prison. Neither witness, however, was able to explain why these problems could not be addressed by taking a photograph of an inmate without a beard, a practice followed in other prison systems. Lay voiced concern that the Department would be unable to monitor the length of a prisoner's beard to ensure that it did not exceed one-half inch, but he acknowledged that the Department kept track of the length of the beards of those inmates who are allowed to wear a ¼-inch beard for medical reasons.

As a result of the preliminary injunction, petitioner had a short beard at the time of the hearing, and the Magistrate Judge commented: "I look at your particular circumstance and I say, you know, it's almost preposterous to think that you could hide contraband in your beard." App. 155. Nevertheless, the Magistrate Judge recommended that the preliminary injunction be vacated and that petitioner's complaint be dismissed for failure to state a claim

on which relief can be granted. The Magistrate Judge emphasized that "the prison officials are entitled to deference," *id.*, at 168, and that the grooming policy allowed petitioner to exercise his religion in other ways, such as by praying on a prayer rug, maintaining the diet required by his faith, and observing religious holidays.

The District Court adopted the Magistrate Judge's recommendation in full, and the Court of Appeals for the Eighth Circuit affirmed in a brief *per curiam* opinion, holding that the Department had satisfied its burden of showing that the grooming policy was the least restrictive means of furthering its compelling security interests. 509 Fed. Appx. 561 (2013). The Court of Appeals stated that "courts should ordinarily defer to [prison officials'] expert judgment" in security matters unless there is substantial evidence that a prison's response is exaggerated. *Id.*, at 562. And while acknowledging that other prisons allow inmates to maintain facial hair, the Eighth Circuit held that this evidence "does not outweigh deference owed to [the] expert judgment of prison officials who are more familiar with their own institutions." *Ibid.*

We entered an injunction pending resolution of petitioner's petition for writ of certiorari, 571 U. S. ___ (2013), and we then granted certiorari, 571 U. S. ___ (2014).

## II

Under RLUIPA, petitioner bore the initial burden of proving that the Department's grooming policy implicates his religious exercise. RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," §2000cc–5(7)(A), but, of course, a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation, see *Hobby Lobby*, 573 U. S., at ___, n. 28 (slip op., at 29, n. 28). Here, the religious exercise at issue is the growing of a beard, which petitioner believes is a dictate of

his religious faith, and the Department does not dispute the sincerity of petitioner's belief.

In addition to showing that the relevant exercise of religion is grounded in a sincerely held religious belief, petitioner also bore the burden of proving that the Department's grooming policy substantially burdened that exercise of religion. Petitioner easily satisfied that obligation. The Department's grooming policy requires petitioner to shave his beard and thus to "engage in conduct that seriously violates [his] religious beliefs." *Id.,* at ___ (slip op., at 32). If petitioner contravenes that policy and grows his beard, he will face serious disciplinary action. Because the grooming policy puts petitioner to this choice, it substantially burdens his religious exercise. Indeed, the Department does not argue otherwise.

The District Court reached the opposite conclusion, but its reasoning (adopted from the recommendation of the Magistrate Judge) misunderstood the analysis that RLUIPA demands. First, the District Court erred by concluding that the grooming policy did not substantially burden petitioner's religious exercise because "he had been provided a prayer rug and a list of distributors of Islamic material, he was allowed to correspond with a religious advisor, and was allowed to maintain the required diet and observe religious holidays." App. 177. In taking this approach, the District Court improperly imported a strand of reasoning from cases involving prisoners' First Amendment rights. See, *e.g., O'Lone* v. *Estate of Shabazz,* 482 U. S. 342, 351–352 (1987); see also *Turner* v. *Safley,* 482 U. S. 78, 90 (1987). Under those cases, the availability of alternative means of practicing religion is a relevant consideration, but RLUIPA provides greater protection. RLUIPA's "substantial burden" inquiry asks whether the government has substantially burdened religious exercise (here, the growing of a ½-inch beard), not whether the RLUIPA claimant is able to engage in other forms of

religious exercise.

Second, the District Court committed a similar error in suggesting that the burden on petitioner's religious exercise was slight because, according to petitioner's testimony, his religion would "credit" him for attempting to follow his religious beliefs, even if that attempt proved to be unsuccessful. RLUIPA, however, applies to an exercise of religion regardless of whether it is "compelled." §2000cc–5(7)(A).

Finally, the District Court went astray when it relied on petitioner's testimony that not all Muslims believe that men must grow beards. Petitioner's belief is by no means idiosyncratic. See Brief for Islamic Law Scholars as *Amici Curiae* 2 ("hadith requiring beards . . . are widely followed by observant Muslims across the various schools of Islam"). But even if it were, the protection of RLUIPA, no less than the guarantee of the Free Exercise Clause, is "not limited to beliefs which are shared by all of the members of a religious sect." *Thomas* v. *Review Bd. of Indiana Employment Security Div.*, 450 U. S. 707, 715–716 (1981).

## III

Since petitioner met his burden of showing that the Department's grooming policy substantially burdened his exercise of religion, the burden shifted to the Department to show that its refusal to allow petitioner to grow a ½-inch beard "(1) [was] in furtherance of a compelling governmental interest; and (2) [was] the least restrictive means of furthering that compelling governmental interest." §2000cc–1(a).

The Department argues that its grooming policy represents the least restrictive means of furthering a "'broadly formulated interes[t],'" see *Hobby Lobby*, *supra*, at ___ (slip op., at 39) (quoting *O Centro*, 546 U. S., at 431), namely, the Department's compelling interest in prison safety and security. But RLUIPA, like RFRA, contem-

plates a "'more focused'" inquiry and "'requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law "to the person"—the particular claimant whose sincere exercise of religion is being substantially burdened.'" *Hobby Lobby*, 573 U. S.*,* at \_\_\_ (slip op., at 39) (quoting *O Centro*, *supra*, at 430–431 (quoting §2000bb–1(b))). RLUIPA requires us to "'scrutiniz[e] the asserted harm of granting specific exemptions to particular religious claimants'" and "to look to the marginal interest in enforcing" the challenged government action in that particular context. *Hobby Lobby*, *supra,* at \_\_\_ (slip op., at 39) (quoting *O Centro*, *supra*, at 431; alteration in original). In this case, that means the enforcement of the Department's policy to prevent petitioner from growing a ½-inch beard.

The Department contends that enforcing this prohibition is the least restrictive means of furthering prison safety and security in two specific ways.

A

The Department first claims that the no-beard policy prevents prisoners from hiding contraband. The Department worries that prisoners may use their beards to conceal all manner of prohibited items, including razors, needles, drugs, and cellular phone subscriber identity module (SIM) cards.

We readily agree that the Department has a compelling interest in staunching the flow of contraband into and within its facilities, but the argument that this interest would be seriously compromised by allowing an inmate to grow a ½-inch beard is hard to take seriously. As noted, the Magistrate Judge observed that it was "almost preposterous to think that [petitioner] could hide contraband" in the short beard he had grown at the time of the evidentiary hearing. App. 155. An item of contraband would have to be very small indeed to be concealed by a ½-inch

beard, and a prisoner seeking to hide an item in such a short beard would have to find a way to prevent the item from falling out. Since the Department does not demand that inmates have shaved heads or short crew cuts, it is hard to see why an inmate would seek to hide contraband in a ½-inch beard rather than in the longer hair on his head.

Although the Magistrate Judge dismissed the possibility that contraband could be hidden in a short beard, the Magistrate Judge, the District Court, and the Court of Appeals all thought that they were bound to defer to the Department's assertion that allowing petitioner to grow such a beard would undermine its interest in suppressing contraband. RLUIPA, however, does not permit such unquestioning deference. RLUIPA, like RFRA, "makes clear that it is the obligation of the courts to consider whether exceptions are required under the test set forth by Congress." *O Centro*, s*upra*, at 434. That test requires the Department not merely to explain why it denied the exemption but to prove that denying the exemption is the least restrictive means of furthering a compelling governmental interest. Prison officials are experts in running prisons and evaluating the likely effects of altering prison rules, and courts should respect that expertise. But that respect does not justify the abdication of the responsibility, conferred by Congress, to apply RLUIPA's rigorous standard. And without a degree of deference that is tantamount to unquestioning acceptance, it is hard to swallow the argument that denying petitioner a ½-inch beard actually furthers the Department's interest in rooting out contraband.

Even if the Department could make that showing, its contraband argument would still fail because the Department cannot show that forbidding very short beards is the least restrictive means of preventing the concealment of contraband. "The least-restrictive-means standard is

exceptionally demanding," and it requires the government to "sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y]." *Hobby Lobby*, *supra*, at ___ (slip op., at 40). "[I]f a less restrictive means is available for the Government to achieve its goals, the Government must use it." *United States* v. *Playboy Entertainment Group, Inc.*, 529 U. S. 803, 815 (2000).

The Department failed to establish that it could not satisfy its security concerns by simply searching petitioner's beard. The Department already searches prisoners' hair and clothing, and it presumably examines the ¼-inch beards of inmates with dermatological conditions. It has offered no sound reason why hair, clothing, and ¼-inch beards can be searched but ½-inch beards cannot. The Department suggests that requiring guards to search a prisoner's beard would pose a risk to the physical safety of a guard if a razor or needle was concealed in the beard. But that is no less true for searches of hair, clothing, and ¼-inch beards. And the Department has failed to prove that it could not adopt the less restrictive alternative of having the prisoner run a comb through his beard. For all these reasons, the Department's interest in eliminating contraband cannot sustain its refusal to allow petitioner to grow a ½-inch beard.

B

The Department contends that its grooming policy is necessary to further an additional compelling interest, *i.e.*, preventing prisoners from disguising their identities. The Department tells us that the no-beard policy allows security officers to identify prisoners quickly and accurately. It claims that bearded inmates could shave their beards and change their appearance in order to enter restricted areas within the prison, to escape, and to evade apprehension after escaping.

We agree that prisons have a compelling interest in the quick and reliable identification of prisoners, and we acknowledge that any alteration in a prisoner's appearance, such as by shaving a beard, might, in the absence of effective countermeasures, have at least some effect on the ability of guards or others to make a quick identification. But even if we assume for present purposes that the Department's grooming policy sufficiently furthers its interest in the identification of prisoners, that policy still violates RLUIPA as applied in the circumstances present here. The Department contends that a prisoner who has a beard when he is photographed for identification purposes might confuse guards by shaving his beard. But as petitioner has argued, the Department could largely solve this problem by requiring that all inmates be photographed without beards when first admitted to the facility and, if necessary, periodically thereafter. Once that is done, an inmate like petitioner could be allowed to grow a short beard and could be photographed again when the beard reached the ½-inch limit. Prison guards would then have a bearded and clean-shaven photo to use in making identifications. In fact, the Department (like many other States, see Brief for Petitioner 39) already has a policy of photographing a prisoner both when he enters an institution and when his "appearance changes at any time during [his] incarceration." Arkansas Department of Correction, Inmate Handbook 3–4 (rev. Jan. 2013).

The Department argues that the dual-photo method is inadequate because, even if it might help authorities apprehend a bearded prisoner who escapes and then shaves his beard once outside the prison, this method is unlikely to assist guards when an inmate quickly shaves his beard in order to alter his appearance within the prison. The Department contends that the identification concern is particularly acute at petitioner's prison, where inmates live in barracks and work in fields. Counsel for

the Department suggested at oral argument that a prisoner could gain entry to a restricted area by shaving his beard and swapping identification cards with another inmate while out in the fields. Tr. of Oral Arg. 28–30, 39–43.

We are unpersuaded by these arguments for at least two reasons. First, the Department failed to show, in the face of petitioner's evidence, that its prison system is so different from the many institutions that allow facial hair that the dual-photo method cannot be employed at its institutions. Second, the Department failed to establish why the risk that a prisoner will shave a ½-inch beard to disguise himself is so great that ½-inch beards cannot be allowed, even though prisoners are allowed to grow mustaches, head hair, or ¼-inch beards for medical reasons. All of these could also be shaved off at a moment's notice, but the Department apparently does not think that this possibility raises a serious security concern.

C

In addition to its failure to prove that petitioner's proposed alternatives would not sufficiently serve its security interests, the Department has not provided an adequate response to two additional arguments that implicate the RLUIPA analysis.

First, the Department has not adequately demonstrated why its grooming policy is substantially underinclusive in at least two respects. Although the Department denied petitioner's request to grow a ½-inch beard, it permits prisoners with a dermatological condition to grow ¼-inch beards. The Department does this even though both beards pose similar risks. And the Department permits inmates to grow more than a ½-inch of hair on their heads. With respect to hair length, the grooming policy provides only that hair must be worn "above the ear" and "no longer in the back than the middle of the nape of the

neck." App. to Brief for Petitioner 11a. Hair on the head
is a more plausible place to hide contraband than a ½-inch
beard—and the same is true of an inmate's clothing and
shoes. Nevertheless, the Department does not require
inmates to go about bald, barefoot, or naked. Although the
Department's proclaimed objectives are to stop the flow of
contraband and to facilitate prisoner identification, "[t]he
proffered objectives are not pursued with respect to analo-
gous nonreligious conduct," which suggests that "those
interests could be achieved by narrower ordinances that
burdened religion to a far lesser degree." *Church of
Lukumi Babalu Aye, Inc.* v. *Hialeah,* 508 U. S. 520, 546
(1993).

In an attempt to demonstrate why its grooming policy is
underinclusive in these respects, the Department empha-
sizes that petitioner's ½-inch beard is longer than the ¼-
inch beard allowed for medical reasons. But the Depart-
ment has failed to establish (and the District Court did not
find) that a ¼-inch difference in beard length poses a
meaningful increase in security risk. The Department
also asserts that few inmates require beards for medical
reasons while many may request beards for religious
reasons. But the Department has not argued that denying
petitioner an exemption is necessary to further a compel-
ling interest in cost control or program administration. At
bottom, this argument is but another formulation of the
"classic rejoinder of bureaucrats throughout history: If I
make an exception for you, I'll have to make one for every-
body, so no exceptions." *O Centro,* 546 U. S., at 436. We
have rejected a similar argument in analogous contexts,
see *ibid.*; *Sherbert,* 374 U. S., at 407, and we reject it again
today.

Second, the Department failed to show, in the face of
petitioner's evidence, why the vast majority of States and
the Federal Government permit inmates to grow ½-inch
beards, either for any reason or for religious reasons, but

it cannot. See Brief for Petitioner 24–25; Brief for United States as *Amicus Curiae* 28–29. "While not necessarily controlling, the policies followed at other well-run institutions would be relevant to a determination of the need for a particular type of restriction." *Procunier* v. *Martinez*, 416 U. S. 396, 414, n. 14 (1974). That so many other prisons allow inmates to grow beards while ensuring prison safety and security suggests that the Department could satisfy its security concerns through a means less restrictive than denying petitioner the exemption he seeks.

We do not suggest that RLUIPA requires a prison to grant a particular religious exemption as soon as a few other jurisdictions do so. But when so many prisons offer an accommodation, a prison must, at a minimum, offer persuasive reasons why it believes that it must take a different course, and the Department failed to make that showing here. Despite this, the courts below deferred to these prison officials' mere say-so that they could not accommodate petitioner's request. RLUIPA, however, demands much more. Courts must hold prisons to their statutory burden, and they must not "assume a plausible, less restrictive alternative would be ineffective." *Playboy Entertainment*, 529 U. S., at 824.

We emphasize that although RLUIPA provides substantial protection for the religious exercise of institutionalized persons, it also affords prison officials ample ability to maintain security. We highlight three ways in which this is so. First, in applying RLUIPA's statutory standard, courts should not blind themselves to the fact that the analysis is conducted in the prison setting. Second, if an institution suspects that an inmate is using religious activity to cloak illicit conduct, "prison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic." *Cutter* v. *Wilkinson*, 544 U. S. 709, 725, n. 13

(2005).  See also *Hobby Lobby*, 573 U. S., at ___, n. 28 (slip op., at 29, n. 28).  Third, even if a claimant's religious belief is sincere, an institution might be entitled to withdraw an accommodation if the claimant abuses the exemption in a manner that undermines the prison's compelling interests.

## IV

In sum, we hold that the Department's grooming policy violates RLUIPA insofar as it prevents petitioner from growing a ½-inch beard in accordance with his religious beliefs.  The judgment of the United States Court of Appeals for the Eighth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 13–6827

_____

## GREGORY HOUSTON HOLT, AKA ABDUL MAALIK MUHAMMAD, PETITIONER *v.* RAY HOBBS, DIRECTOR, ARKANSAS DEPARTMENT OF CORRECTION, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

[January 20, 2015]

JUSTICE GINSBURG, with whom JUSTICE SOTOMAYOR joins, concurring.

Unlike the exemption this Court approved in *Burwell* v. *Hobby Lobby Stores, Inc.*, 573 U. S. \_\_\_ (2014), accommodating petitioner's religious belief in this case would not detrimentally affect others who do not share petitioner's belief. See *id.,* at \_\_\_, \_\_\_–\_\_\_, and n. 8, \_\_\_ (slip op., at 2, 7–8, and n. 8, 27) (GINSBURG, J., dissenting). On that understanding, I join the Court's opinion.

# SUPREME COURT OF THE UNITED STATES

_____

No. 13–6827

_____

GREGORY HOUSTON HOLT, AKA ABDUL MAALIK
MUHAMMAD, PETITIONER *v.* RAY HOBBS,
DIRECTOR, ARKANSAS DEPARTMENT
OF CORRECTION, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE EIGHTH CIRCUIT

[January 20, 2015]

JUSTICE SOTOMAYOR, concurring.

I concur in the Court's opinion, which holds that the Department failed to show why the less restrictive alternatives identified by petitioner in the course of this litigation were inadequate to achieve the Department's compelling security-related interests. I write separately to explain my understanding of the applicable legal standard.

Nothing in the Court's opinion calls into question our prior holding in *Cutter* v. *Wilkinson* that "[c]ontext matters" in the application of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 114 Stat. 803, 42 U. S. C. §2000cc *et seq.* 544 U. S. 709, 723 (2005) (internal quotation marks omitted). In the dangerous prison environment, "regulations and procedures" are needed to "maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Ibid.* Of course, that is not to say that cost alone is an absolute defense to an otherwise meritorious RLUIPA claim. See §2000cc–3(c). Thus, we recognized "that prison security is a compelling state interest, and that deference is due to institutional officials' expertise in this area." *Cutter,* 544 U. S., at 725, n. 13.

I do not understand the Court's opinion to preclude deferring to prison officials' reasoning when that deference is due—that is, when prison officials offer a plausible explanation for their chosen policy that is supported by whatever evidence is reasonably available to them. But the deference that must be "extend[ed to] the experience and expertise of prison administrators does not extend so far that prison officials may declare a compelling governmental interest by fiat." *Yellowbear* v. *Lampert*, 741 F. 3d 48, 59 (CA10 2014). Indeed, prison policies "'grounded on mere speculation'" are exactly the ones that motivated Congress to enact RLUIPA. 106 Cong. Rec. 16699 (2000) (quoting S. Rep. No. 103–111, 10 (1993)).

Here, the Department's failure to demonstrate why the less restrictive policies petitioner identified in the course of the litigation were insufficient to achieve its compelling interests—not the Court's independent judgment concerning the merit of these alternative approaches—is ultimately fatal to the Department's position. The Court is appropriately skeptical of the relationship between the Department's no-beard policy and its alleged compelling interests because the Department offered little more than unsupported assertions in defense of its refusal of petitioner's requested religious accommodation. RLUIPA requires more.

One final point bears emphasis. RLUIPA requires institutions refusing an accommodation to demonstrate that the policy it defends "is the least restrictive means of furthering [the alleged] compelling . . . interest[s]." §2000cc–1(a)(2); see also *Washington* v. *Klem*, 497 F. 3d 272, 284 (CA3 2007) ("[T]he phrase 'least restrictive means' is, by definition, a relative term. It necessarily implies a comparison with other means"); *Couch* v. *Jabe*, 679 F. 3d 197, 203 (CA4 2012) (same). But nothing in the Court's opinion suggests that prison officials must refute every conceivable option to satisfy RLUIPA's least restric-

tive means requirement.  Nor does it intimate that officials must prove that they considered less restrictive alternatives at a particular point in time.  Instead, the Court correctly notes that the Department inadequately responded to the less restrictive policies that petitioner brought to the Department's attention during the course of the litigation, including the more permissive policies used by the prisons in New York and California.  See, *e.g., United States* v. *Wilgus*, 638 F. 3d 1274, 1289 (CA10 2011) (observing in the analogous context of the Religious Freedom Restoration Act of 1993 that the government need not "do the impossible—refute each and every conceivable alternative regulation scheme" but need only "refute the alternative schemes offered by the challenger").

　　Because I understand the Court's opinion to be consistent with the foregoing, I join it.