**DLD-136** **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3893
_____

CURRY ROBINSON,
                                                  Appellant
v.

SUPERINTENDENT HOUTZDALE SCI;
SECRETARY DEPARTMENT OF CORRECTIONS;
VINCENT DEFELICE, Unit Manager;
SHANNON SAGE, Activities Manager

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 16-cv-00044)
District Judge: Kim R. Gibson

_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2) or
Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
February 16, 2017

Before:  CHAGARES, VANASKIE and KRAUSE, Circuit Judges

(Opinion filed June 19, 2017)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

Curry Robinson appeals from an order of the District Court dismissing his amended complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, we will summarily affirm in part and reverse in part, and remand for further proceedings.

Robinson, an inmate at the State Correctional Institution in Houtzdale, Pennsylvania ("SCI-Houtzdale"), filed a civil rights action on February 17, 2016 in the United States District Court for the Western District of Pennsylvania against Secretary John E. Wetzel of the Department of Corrections ("DOC"), Superintendent Kenneth Cameron, Unit Manager Vincent DeFelice, and Activities Manager Shannon Sage. In his amended complaint, Robinson alleged violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, et seq., his First Amendment Free Exercise rights, and his Fourteenth Amendment right to equal protection. Robinson sought injunctive relief only.

With respect to the First Amendment and RLUIPA, Robinson, who is serving time for sexual assault, alleged that he was unable to participate in and complete the prison's Sex Offenders Therapeutic Community program because it requires him to "confess" to a therapist or counselor. Robinson, a Christian, claimed that the Bible does not permit him to confess his sins to anyone other than God, and thus this requirement substantially burdens his religious rights. Moreover, because he cannot participate in and complete the program, he cannot reap its benefits, which include a transfer to be closer to his family, "privileged blocks/status," and other things. Robinson asserted that he grieved the policy

2

on March, 25, 2015, and that defendant DeFelice responded that he should "set aside his religious beliefs."

With respect to his equal protection claim, Robinson alleged that a DOC policy allows inmates to spend up to $500 dollars for the purchase of a guitar, while inmates seeking to purchase a keyboard are limited by both the amount of money they may spend and the options available for purchase. Robinson alleged that the policy "permits racially profiling and bias by allowing disparity to those who are African American who predominantly play keyboard…."

The defendants moved to dismiss the amended complaint under Rule 12(b)(6) and attached Robinson's grievances as exhibits. They argued that dismissal of the amended complaint was proper on the basis of lack of personal involvement by any of the defendants in the alleged constitutional and statutory violations. In the alternative, the defendants argued that Robinson failed to state a claim under either RLUIPA, the First Amendment, or the Equal Protection Clause. With respect to the religion claims, they argued that Robinson had not made sufficient allegations regarding either the "precise" elements of the sex offender program which allegedly burden his practice of religion, or the particular aspects of his religious beliefs or practices which were substantially burdened by the program. They argued that Robinson had not been asked to "confess" or "to make a confession" in any religious sense, although they acknowledged that, were he to participate in and complete the program, he would have to accept responsibility for his sex offenses. The defendants did not challenge the sincerity of Robinson's beliefs. With respect to the equal protection claim, the defendants argued that Robinson failed to allege

that he had been subjected to intentional discrimination on the basis of race, religion, gender, or national origin. Robinson opposed the dismissal of his amended complaint.

Following the completion of briefing, the Magistrate Judge filed a Report and Recommendation, in which she concluded that the defendants' motion should be granted and that Robinson's amended complaint should be dismissed. The Magistrate Judge first rejected the defendants' lack of personal involvement argument, correctly noting, among other things, that Robinson had alleged in his amended complaint that Secretary Wetzel and Superintendent Cameron were liable as policymakers, and that liability under 42 U.S.C. § 1983 may be imposed on an official with final policymaking authority, see McGreevy v. Stroup, 413 F.3d 359, 367-68 (3d Cir. 2005) ("[E]ven one decision by a school superintendent, if s/he were a final policymaker, would render his or her decision district policy" and subject him or her to liability under § 1983).

Although the Magistrate Judge rejected the defendants' lack of personal involvement argument, she ultimately concluded that Robinson failed to state a claim against any of the defendants under either RLUIPA, the First Amendment, or the Equal Protection Clause of the Fourteenth Amendment. The Magistrate Judge reviewed the standards applicable to First Amendment claims, including the factors set forth in Turner v. Safley, 482 U.S. 78 (1987), and the standards applicable to claims under RLUIPA, see Holt v. Hobbs, 135 S. Ct. 853 (2015). The Magistrate Judge also properly noted that RLUIPA provides greater protection to plaintiffs, and that under RLUIPA the burden is on the prison to show that its policy "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental

4

interest," 42 U.S.C. § 2000cc-1(a).  The Magistrate Judge then based her conclusion on the threshold "substantial burden" issue, concluding that Robinson had not stated a plausible claim that the sex offender treatment program's requirement that an inmate accept responsibility for his sex offenses had a serious effect on the exercise of his Christian religion.[1]  Specifically, she agreed with the defendants that Robinson had not been asked to "confess" or to "make a confession" in any religious sense.  Rather, in the "Sex Offender Candidacy Evaluation," he merely was asked to describe what occurred in his offenses, and notified that if he agreed to participate in the sex offenders treatment program he would have to assume full responsibility for the aforementioned offenses. The Magistrate Judge noted further that Robinson voluntarily chose not to participate in the program in 2006, and, thus, that he had not actually been subjected to any requirements of the program.  Like the defendants, the Magistrate Judge did not address the sincerity of Robinson's beliefs.

In the alternative, the Magistrate Judge concluded that, even if Robinson could show that his religious rights were substantially burdened by the program's acceptance of responsibility requirement, courts generally have held that (1) there is a rational connection between a sex offender treatment program's requirement that an inmate admit the facts of his offense and take responsibility for his crime and a state correctional agency's legitimate penological interest in rehabilitating sex offenders, see, e.g., Searcy v. Simmons, 299 F.3d 1220, 1228 (10th Cir. 2002) (holding that admission of

---

[1] We note that Chief Grievance Officer Dorina Varner denied Robinson's grievance on this same basis, stating: "You failed to provide any evidence of a substantial burden on your religious practice."  Defendants' Motion to Dismiss, Exhibit 1.

responsibility requirement does not violate First Amendment because participation in sex offenders program is voluntary, but, "[e]ven were we to assume the admission of responsibility impinges upon Mr. Searcy's right to freely exercise his religious beliefs, we would agree with the district court that the requirement is 'reasonably related' to the [Kansas Department of Corrections'] penological interests."); and that (2) there is no alternative method of accommodating an inmate's concern that the admission of guilt in the context of the treatment program would violate his religious beliefs.").

Last, the Magistrate Judge rejected Robinson's equal protection claim, in pertinent part, on the ground that he failed to allege a plausible claim that the defendants engaged in any intentional prohibited discrimination against inmates, including Robinson, who wished to purchase keyboards.

Robinson filed Objections to the Report and Recommendation, asserting that an admission of guilt in the context of the sex offenders program would constitute, for him, a "confession by default;" and that the program requirement was a "pretext" solely motivated by the DOC's penological goal of reducing crime, with no therapeutic benefits for him. He included with his Objections some suggestions for how prison officials could accommodate his religious beliefs. In an order entered on September 26, 2016, the District Court overruled the Objections, dismissed Robinson's amended complaint with prejudice, and adopted the Report and Recommendation as the Opinion of the Court.

Robinson appeals. Our Clerk granted him leave to appeal in forma pauperis and advised him that the appeal was subject to summary dismissal under 28 U.S.C. § 1915(e)(2) or summary action under Third Cir. LAR 27.4 and I.O.P. 10.6.

6

We will summarily affirm in part and reverse in part, and remand for further proceedings. Summary action is appropriate where no substantial question is presented by the appeal, Third Circuit LAR 27.4 and I.O.P. 10.6. Review of a District Court's decision to grant a motion to dismiss pursuant to Rule 12(b)(6) is plenary. A Rule 12(b)(6) motion tests the sufficiency of the factual allegations contained in the amended complaint. See Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

We will summarily reverse the order of the District Court to the extent of Robinson's religion claims and remand for further proceedings. The threshold question in any First Amendment or RLUIPA case is whether the prison's challenged policy or practice has substantially burdened the practice of the inmate-plaintiff's religion. See Washington v. Klem, 497 F.3d 272, 277-78 (3d Cir. 2007). We conclude that Robinson has made that showing, because under RLUIPA, we cannot "inquir[e] into whether a particular belief or practice is 'central' to a prisoner's religion," Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 (2005), or question the "truth" of his assertion of what his sincerely held religious beliefs require, Gillette v. United States, 401 U.S. 437, 457 (1971). In light of this limitation, we conclude that the Magistrate Judge went too far by analyzing the

7

"truth" of Robinson's beliefs when she determined, based on the pleadings alone, that the sexual offender program did not impose a substantial burden because it did not ask Robinson "to confess in any religious sense." Because, at the pleading stage, we are required under RLUIPA to accept as true Robinson's sincerely held belief that any acknowledgement of guilt is a religious "confession," then we must also accept at the pleading stage, that Robinson was "forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit," Washington, 497 F.3d at 280.

We note that our case law and Supreme Court precedent also say that we can look behind the purported religious belief to the extent that we are questioning whether the belief is honestly held, and we have recognized that some assertions of religious belief are so facially implausible or secular in nature that we do not credit them as a matter of law. See, e.g., Cutter, 544 U.S. at 725 n.13 (noting that RLUIPA permits an inquiry into "whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic"); Africa v. Commonwealth of Pennsylvania, 662 F.2d 1025, 1032 (3d Cir. 1981) (holding that prison was not required to provide prisoner with all raw food diet because his asserted beliefs "[are] not a 'religion,' in the sense that that term is used in the first amendment"). Here, however, Robinson has asserted that he believes any requirement that he acknowledge his past behavior is a forced "confession," and that his sincerely held religious belief therefore precludes him from verbally accepting responsibility for his past offenses, even for purposes of rehabilitation. This assertion is

8

not so facially implausible that it can be discredited in the context of a Rule 12(b)(6) motion. We thus hold that dismissal of Robinson's claim of a substantial burden on the practice of his religion on the basis of the pleadings alone was not proper.

The Magistrate Judge noted three alternative grounds for dismissing Robinson's amended complaint, none of which is a proper basis for dismissal in our view. First, the Magistrate Judge determined that there was no allegation that Robinson was ordered or sought entry into the sex offender program, and thus any claim of a violation of his religious rights under either the First Amendment or RLUIPA was speculative. The amended complaint alleged, however, and the defendants' exhibits show, that Robinson filed a grievance in 2015 protesting the policy.[2] In response to that grievance, he was asked if he would be willing to admit that he was guilty and was told that he would have to "set aside his religious belief" to enter and complete the program. Robinson alleged that he responded to this direction that he would have to set aside his religious beliefs to enter the program by stating that "this is why I am grieving the policy." Accordingly, although there was no direct allegation that Robinson tried to join the sexual offenders treatment program, the amended complaint creates a reasonable inference that Robinson filed the grievance because he sought to join the program.

Second, the Magistrate Judge determined that Robinson chose not to try to enter the sex offender program in 2006 after he received a form detailing what it required,

---

[2] When ruling on a defendant's motion to dismiss, the District Court may consider a document explicitly relied upon in the complaint without converting the motion to dismiss to a summary judgment motion. In re: Rockefeller Center Properties, Inc. Securities Litigation, 184 F.3d 280, 287 (3d Cir. 1999).

making his 2016 civil action suit fall well outside RLUIPA's four-year-statute of limitations, 28 U.S.C. § 1658 (2006); Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004) (holding that four-year statute of limitations applies if plaintiff's claim was made possible by a post-1990 Act of Congress). The statute of limitations would start to run anew, however, when Robinson filed his new grievance in 2015. Accordingly, although the statute of limitations may have run on any suit based on his choice not to enter the program in 2006, it does that bar him from bringing a later claim based on a subsequent grievance when the challenged policy is still ongoing.

Last, the Magistrate Judge concluded that the prison's sex offender treatment program can withstand scrutiny because there is a "rational connection" between the program's goals and a legitimate penological interest. This, however, is the wrong legal test for analyzing a regulation imposing a substantial burden on a religious belief. This "reasonably related to legitimate penological interest" standard applies in the First Amendment context, but RLUIPA is broader than the First Amendment and requires the "compelling government interest" and "least restrictive means" test of strict scrutiny, Cutter, 544 U.S. at 717.

It is true that the Supreme Court has emphasized that "context matters" when applying RLUIPA's standard to prison regulations, id. at 722-23, and true that we owe "'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" Id. at 723 (quoting RLUIPA's legislative history). But here, we are reviewing the grant of a Rule

12(b)(6) motion, and while the District Court may well conclude after considering evidence or testimony on the subject that SCI-Houtzdale's interest in its sex offenders taking responsibility for their actions as part of its therapeutic program is a "compelling interest" and that there is no less restrictive means for Robinson to meet the goals of the sex offender program, it cannot do so on the basis of the pleadings alone. That is because RLUIPA does not permit "unquestioning deference" to prison administrators, Holt, 135 S. Ct. at 864, and requires the prison "not merely to explain why it denied the exemption but to prove that denying the exemption is the least restrictive means of furthering a compelling governmental interest." Id. Insofar as Robinson has met his burden to show, at least at the pleading stage, that the acceptance of responsibility requirement substantially burdens the practice of his religion, the burden shifts to the defendants to show that that the prison's refusal to exempt him from the acceptance of responsibility requirement is in furtherance of a compelling governmental interest and the least restrictive means of furthering that compelling governmental interest. Holt, 135 S. Ct. at 863; 42 U.S.C. 2000cc-1(a).

The feasibility of a religious accommodation usually is a fact-intensive inquiry, see Chance v. Texas Dep't of Criminal Justice, 730 F.3d 404, 418 (5th Cir. 2013). Here, we conclude that the defendants cannot meet their burden of proof without at least creating a summary judgment record. See generally Yellowbear v. Lampert, 741 F.3d 48, 59-60 (10th Cir. 2014) ("At summary judgment, the government must do more than assert an 'undue burden' or a 'compelling interest.' When weighing the existence of a compelling interest, the deference due prison administrators … doesn't mean prison

11

officials get to recognize compelling interests on their own. If that were the case, RLUIPA's supposedly strict judicial scrutiny would become no judicial scrutiny at all.").

We note that the "compelling government interest" and "least restrictive means" issues relating to sex offender treatment programs have been litigated in other contexts. In McKune v. Lile, 536 U.S. 24 (2002), which involved the Fifth Amendment right against self-incrimination, Justice Kennedy, writing for the plurality, explained the importance of the acceptance of responsibility requirement in sex offender treatment programs as follows:

> Therapists and correctional officers widely agree that clinical rehabilitative programs can enable sex offenders to manage their impulses and in this way reduce recidivism. An important component of those rehabilitation programs requires participants to confront their past and accept responsibility for their misconduct. Denial is generally regarded as a main impediment to successful therapy, and therapists depend on offenders' truthful descriptions of events leading to past offences in order to determine which behaviours need to be targeted in therapy. Research indicates that offenders who deny all allegations of sexual abuse are three times more likely to fail in treatment than those who admit even partial complicity.

Id. at 33 (citations, internal quotation marks, and brackets removed).

Nevertheless, RLUIPA requires the defendant prison officials to demonstrate that the "compelling government interest" and "least restrictive means" test is satisfied with respect to the particular claimant, here Robinson, whose allegedly sincere exercise of religion is being substantially burdened. Holt, 135 S. Ct. at 863; Yellowbear, 741 F.3d at 58. The "feasibility" of the requested exemption "should be addressed on a 'case-by-case' basis, taking each case as it comes: accommodations to avoid substantial burdens must be made … unless they impinge on a demonstrated compelling interest." Id. at 62.

12

On remand, the defendants, following discovery, will have the opportunity to meet their burden of proof by showing that there is no genuine issue of fact, Fed. R. Civ. P. 56(a), with respect to the "compelling government interest" and "least restrictive means" issues presented by Robinson's RLUIPA claim,[3] and Robinson will have an opportunity to rebut their case by "showing that the materials cited do not establish the absence … of a genuine dispute…." Fed. R. Civ. P. 56(c)(1)(B).[4]

We will summarily affirm the dismissal of Robinson's equal protection claim. To state an equal protection claim, Robinson must allege intentional discrimination. Washington v. Davis, 426 U.S. 229, 240 (1976). It is not enough for him to allege that he is African American and that the prison has different policies relating to the purchase of guitars versus keyboards. Rather, race must have been a substantial factor in the different treatment that is alleged. See Hassan v. City of New York, 804 F.3d 277, 294 (3d Cir. 2015) (citing Davis, 426 U.S. at 235). Robinson's allegations fall well short of this "substantial factor" requirement. Accordingly, dismissal pursuant to Rule 12(b)(6) of the equal protection claim was proper. Because defendant Sage's only involvement in this

---

[3] Appellee has also asserted there are grounds to doubt the sincerity of Robinson's belief. Appellee's Resp. 4 n.1. Such challenges, however, are not properly addressed at the motion to dismiss stage. See, e.g., Williams v. Bitner, 455 F.3d 186, 194 (3d Cir. 2006).

[4] Although we do not necessarily disagree with the Magistrate Judge's Rule 12(b)(6) analysis of Robinson's First Amendment religion claim, i.e., its application of the "rational connection" test, R. & R. at 9, (as opposed to RLUIPA's compelling interest test as discussed above), we anticipate summary judgment proceedings will provide a more complete record for adjudicating that claim and thus our decision to reverse and remand includes it as well.

case is in connection with the alleged equal protection violation, he is dismissed from the civil action.

For the foregoing reasons, we will summarily affirm in part and reverse in part the order of the District Court dismissing Robinson's amended complaint pursuant to Rule 12(b)(6), and remand for further proceedings.