[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11239
Non-Argument Calendar
_____

D.C. Docket No. 9:12-cv-80404-KLR


REGINALD WILKINSON,

                                                      Plaintiff - Appellant,

                              versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
THE GEO GROUP, INC.,
et al,
ENOCH OJUKWU,
Chaplain,
FORMER WARDEN SOUTH BAY CORRECTIONAL FACILITY,
MICHAEL IBEZIM,
Former Assistant Warden South Bay Correctional Facility, et al.,

                                                      Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 15, 2015)

Before MARTIN, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Reginald Wilkinson, a Florida prisoner now represented by counsel, appeals the district court's *sua sponte* dismissal of several of his 42 U.S.C. § 1983 claims under 28 U.S.C. § 1915(e)(2)(B) and subsequent grant of summary judgment on his remaining claims. For the reasons set forth below, we affirm in part, vacate in part, and remand to the district court for further consideration.

Mr. Wilkinson, a practitioner of Santeria, filed a complaint in April 2012 against a number of prison officials at Florida's South Bay Correctional Facility ("SBCF"), the Secretary of the Florida Department of Corrections (the "Secretary"), and The GEO Group, Inc. ("GEO"), a for-profit entity that operates SBCF (collectively, "the defendants"). In that complaint, as relevant here, he asserted the defendants violated his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the First, Eighth, and Fourteenth Amendments of the United States Constitution. The claims stemmed from three events Mr. Wilkinson alleged occurred in 2009 and 2010: the response of the prison guards, chaplains, and officers to Mr. Wilkinson's request to celebrate two Santeria holy days; a chaplain's and several officers' retaliation against him for seeking to enforce his right to practice his religion; and the prison medical staff's failure to provide medical assistance.

2

Because Mr. Wilkinson proceeded *in forma pauperis*, a magistrate judge performed an initial review pursuant to 28 U.S.C. § 1915. The magistrate judge issued a report recommending that the district court dismiss claims against a number of defendants for improper venue and against other defendants as based upon untenable legal theories. The magistrate judge also recommended that the district court order Mr. Wilkinson to provide the court with the addresses for Warden Hobart and Assistant Warden Ibezim or risk dismissal of his claims against those defendants for failure to serve process. Finally, the magistrate judge recommended that the district court permit Mr. Wilkinson's "claim of denial of religious freedom" to continue against one defendant, SBCF Chaplain Ojukwu. The magistrate judge made no mention of Mr. Wilkinson's equal protection or retaliation claims against Chaplain Ojukwu. Over Mr. Wilkinson's objections, the district court summarily adopted the magistrate judge's recommendations in full.

After a discovery period, Chaplain Ojukwu moved for summary judgment. The motion was referred to a magistrate judge, who recommended that the district court grant the motion because Mr. Wilkinson had not demonstrated that Chaplain Ojukwu's actions substantially burdened his ability to freely exercise his religion. The magistrate judge again made no mention of Mr. Wilkinson's equal protection and retaliation claims against Chaplain Ojukwu. The district court summarily adopted the magistrate judge's recommendations.

3

Mr. Wilkinson failed to respond to the district court's order to produce the addresses of Warden Hobart and Assistant Warden Ibezim.  The district court never entered an order of dismissal against these defendants, but they apparently were dismissed, because the district court entered a final judgment in which it directed the clerk to close the case.

This is Mr. Wilkinson's (now counseled) appeal.

## II.

## A.

Mr. Wilkinson first contends the district court erroneously dismissed for improper venue a number of defendants.[1]  "[W]e have . . . made clear that while a district court may dismiss a suit *sua sponte* for lack of venue, it may not do so without first giving the parties an opportunity to present their views on the issue." *Algodonera De Las Cabezas, S.A. v. Am. Suisse Capital, Inc.*, 432 F.3d 1343, 1345 (11th Cir. 2005).  "This rule gives defendants an opportunity to waive the venue defense and plaintiffs an opportunity to present arguments as to why venue is proper *before* the case is dismissed." *Id.*  Mr. Wilkinson asserts that the district court failed to give notice to the parties and that the court's venue dismissal therefore must be vacated.  But Mr. Wilkinson did receive notice via the magistrate

---

[1] Those defendants are Cross City Correctional Officers V. Adkins, B. Crumpton, S.V. Davis, D. Hopkins, and Chaplain Robert Wineberg; Kenneth Tucker, E. Stine, Florida Department of Corrections ("FDOC") Chaplain Alex Taylor, M.S. Smith, Pilar Tournay, C. Greene, J. Adams, Celeste Kemp, and T. Bowden.

4

judge's report and an opportunity to present argument via objections to that report. The district court's subsequent dismissal of his claims against these defendants was, therefore, permissible. *Cf. Vanderberg v. Donaldson*, 259 F.3d 1321, 1324 (11th Cir. 2001) (finding no due process violation where plaintiff was given an opportunity to object to a magistrate judge's report and recommendation, and the district court conducted a *de novo* review before dismissing the complaint *sua sponte* under 28 U.S.C. § 1915(e)(2)(B)).  We affirm the court's dismissal of these defendants for improper venue.

## B.

Next, Mr. Wilkinson contends the district court erred in dismissing his claims against Warden Hobart and Assistant Warden Ibezim.  He argues that he provided the court with sufficient information to perfect service on those defendants and that the court erred in putting the onus on him to serve parties for whom he had no address.  We agree.

The district court failed to identify its mechanism for dismissal for failure to serve, but Rule 4(m) of the Federal Rules of Civil Procedure governs.  Rule 4(m) provides that a district court "must dismiss the action without prejudice . . . or order that service be made within a specific time" if the defendant has not been served within 120 days of the filing of the complaint.  Fed. R. Civ. P. 4(m).  The court must extend the time for service, however, if the plaintiff shows "good

5

cause" for the failure to timely serve a defendant.  *Id.*  Although we review *sua sponte* dismissals for failure to serve for an abuse of discretion, we have held that "it is unreasonable to expect incarcerated and unrepresented prisoner-litigants to provide the current addresses of prison-guard defendants who no longer work at the prison."  *Richardson v. Johnson*, 598 F.3d 734, 739-40 (11th Cir. 2010).  "Thus, . . . as long as the court-appointed agent can locate the prison-guard defendant with reasonable effort, prisoner-litigants who provide enough information to identify the prison-guard defendant have established good cause for Rule 4(m) purposes."  *Id.* at 740.

We see no reason why the rule should be different here, where the plaintiff attempting to serve process has been transferred to another institution and alleges the defendants are no longer employed at the facility in which he formerly was housed.  Accordingly, based on *Richardson*, we vacate the district court's dismissal of all claims against defendants Hobart and Ibezim and remand for a determination of whether these defendants can be located with reasonable effort.  *See id.* at 740.  If so, the court must cause these defendants to be served.

## C.

Mr. Wilkinson next asserts that the district court erred in dismissing his claims against GEO as an entity unamenable to suit under § 1983.  GEO concedes the district court's basis for dismissal was erroneous, but it contends this Court

may affirm the dismissal on the alternative ground that Mr. Wilkinson failed to plead factual allegations of an unconstitutional or policy or custom for which GEO could be liable.[2]

*In forma pauperis* proceedings are governed by 28 U.S.C. § 1915.  That statute provides that "the court shall dismiss the case at any time if the court determines that . . . (B) the action or appeal . . . is frivolous or malicious [or] . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2).  We review a district court's *sua sponte* dismissal for failure to state a claim under this statute *de novo*, viewing the allegations in the complaint as true.  *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003).[3]  "*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  *Id.* at 1160 (internal quotation marks omitted).

Mr. Wilkinson advanced six claims against GEO.  Claims 9 and 21 alleged that GEO violated his right to freely exercise his religion by interfering with his celebrations of two Santeria holy days.  Claims 10 and 22 alleged that GEO violated his constitutional right to equal protection under the law by refusing to

---

[2] *See Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) (Municipalities or their "functional equivalent[s]" are "'persons' for purposes of § 1983 and can be liable where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, [ ] decision" or custom, whether formally or informally approved).

[3] Although we review a district court's *sua sponte* dismissal for frivolity for an abuse of discretion, *Hughes*, 350 F.3d at 1160, the magistrate judge's order, which the district court adopted in full, does not indicate that any of the dismissals were based on frivolity.  We accordingly apply a *de novo* standard of review.

permit him to celebrate two holy days despite the fact that inmates who practiced other religions were permitted to observe their holy days.  Claims 31 and 32 alleged that, in interfering with his fasting and feasting requests, GEO violated his free exercise and equal protection rights.

For each of these claims, § 1983 requires that Mr. Wilkinson allege three elements:  (1) he suffered a violation of his constitutional rights; (2) the act or omission that caused the constitutional deprivation was committed by a person acting under color of law; and (3) the constitutional deprivation resulted from a custom, policy, or practice of the municipality or equivalent entity (here, GEO). *See Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987).  GEO contests only Mr. Wilkinson's ability to satisfy the pleading requirements for the third of these elements.

Construing Mr. Wilkinson's *pro se* complaint liberally, we conclude he pled his claims against GEO sufficiently to avoid a dismissal under § 1915.  The complaint alleged that GEO operated SBCF, the facility at which Mr. Wilkinson was housed.  It alleged that SBCF's December 2009 religious service calendar containing sanctioned holy days was signed by Chaplain Ojukwu and Assistant Warden Ibezim, marked with GEO's logo, and distributed to inmates.  It further alleged that Mr. Wilkinson, along with two other SBCF inmates, met with Chaplain Ojukwu on November 20, 2009 to request that they be permitted to

8

celebrate a holy day in honor of Orisha Chango on December 4 and a holy day in honor of Orisha Babalu-Aye on December 17. The chaplain allegedly refused permission, claiming that although the FDOC recognized Santeria as a religion, the FDOC's manual on Santeria indicated no recognized holy days. According to the complaint, Mr. Wilkinson then submitted to Chaplain Ojukwu a written request to celebrate the holy days, which was denied, and a number of formal and informal grievances in which he complained about the denial of his requests. Mr. Wilkinson attached to his complaint copies of these grievances. Also according to the complaint, Mr. Wilkinson wrote an inmate request to Warden Hobart asking that he be permitted to celebrate the December 17 holy day. That request too was denied.

Mr. Wilkinson allegedly went through a similar process in requesting that SBCF officials facilitate his December 17 fast and feast (which, the complaint alleged, was part of his observance of that holy day). In a request to SBCF's Food Service Department, a prison official stated that the department could honor Mr. Wilkinson's request for the prison staff to withhold food on December 17 only if the chaplain approved the holy day. In response to a separate request to Chaplain Ojukwu, however, the chaplain instructed Mr. Wilkinson, "I've spoken with you about your religious holy days and we've forwarded your claimed religious day to [defendant FDOC] Chaplain Alex S. Taylor, chaplaincy services administration to

9

review," but per that review process "no holy/special days" were indicated. Doc. 1, Ex. Z. The fasting and feasting requests therefore also were denied.[4] Finally, the complaint alleged that two other inmates, one an Orthodox Jewish inmate and one a Muslim inmate, were permitted to celebrate their respective holy days.

With these allegations in mind, we disagree with GEO that the complaint is devoid of any factual allegation that it had an unconstitutional policy or custom that violated Mr. Wilkinson's constitutional rights. Even if each isolated incident of which Mr. Wilkinson complained would have been insufficient by itself to indicate a policy or practice that could give rise to § 1983 liability, combined and read with a liberal construction, Mr. Wilkinson's allegations that GEO administration repeatedly refused to permit him to celebrate holy days that were part of his religious exercise were sufficient to withstand dismissal under § 1915. And, although Mr. Wilkinson alleged that the FDOC created the policy regarding Santeria and FDOC Chaplain Taylor played a role in the denial of Mr. Wilkinson's ability to celebrate his holy days, GEO points to no support for its assertion that these allegations are so inconsistent with the allegation that GEO's policies or customs also caused the constitutional violations that the latter must be rejected as a matter of law. Accordingly, we vacate the district court's dismissal of Mr. Wilkinson's claims against GEO and remand for further proceedings.

---

[4] The complaint also alleged that prison officials retaliated against Mr. Wilkinson for his many grievances, but the complaint does not assert a retaliation claim against GEO.

D.

Mr. Wilkinson next argues that the district court erred in dismissing his claims against the Secretary of the Florida Department of Corrections (the "Secretary") based on the same series of events described in Section II.C of this opinion. The magistrate judge's order, which the district court adopted, characterized Mr. Wilkinson's claims against the Secretary as predicated on *respondeat superior*, a theory of vicarious liability that is unavailable to plaintiffs advancing § 1983 claims. The appellants' brief in this case does not address Mr. Wilkinson's argument.[5]

We conclude the magistrate judge and district court erred in their characterization of Mr. Wilkinson's claims. Construed liberally, Mr. Wilkinson's claims were based not on *respondeat superior*, but instead on an FDOC policy or custom that allegedly substantially burdened Mr. Wilkinson's religious exercise. And the claims were advanced not under § 1983 but under RLUIPA. Put differently, Mr. Wilkinson's claims were predicated on a theory of direct liability rather than of vicarious liability, and were formulated under RLUIPA rather than § 1983. For these reasons, the claims are cognizable, and the district court erred in

---

[5] Because we affirm the district court's dismissal of FDOC Chaplain Taylor for improper venue, we need not address Mr. Wilkinson's contention that the district court also erred in dismissing his claims against Chaplain Taylor as based upon an improper theory of *respondeat superior*.

11

ruling otherwise.[6] *See generally Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525 (11th Cir. 2013) (recognizing an RLUIPA claim against FDOC based on a policy that substantially burdened an inmate's free exercise).  Thus, although we express no view on the ultimate merits of these claims, we vacate the district court's dismissal and remand for further proceedings.

E.

Next, Mr. Wilkinson contends the district court erred in dismissing his claims against Dr. Dauphine and Nurse Rudolph based on their alleged deliberate indifference to Mr. Wilkinson's serious medical need.  Mr. Wilkinson alleged that he complained to prison medical staff about his inability to achieve an erection, that the staff refused to administer medical treatment, and that such refusal constituted deliberate indifference in violation of the Eighth Amendment.  *See* Doc. 1 at 73-74 ¶ 3. Perhaps because the complaint also alleged that Mr. Wilkinson was a migraine sufferer, the district court focused on those allegations, determining they did not adequately allege an Eighth Amendment violation.

On appeal, Dr. Dauphine and Nurse Rudolph concede the district court misread Mr. Wilkinson's complaint by focusing solely on his complaints of

---

[6] Mr. Wilkinson asserted nine claims against the Secretary:  Claims 11 and 12 (the Secretary's refusal to permit the celebration of a December 4 holy day); Claims 23 and 24 (the Secretary's refusal to permit celebration of a December 17 holy day); Claims 33-34 (the Secretary's refusal to permit fasting in celebration of the December 17 holy day); Claim 36 (the Secretary's denial of Wilkinson's right to practice Santeria generally); Claims 43 and 48 (the Secretary's policy resulting in confiscation of Wilkinson's religious effects).

headaches.[7]  They contend, however, that the claim nonetheless properly was dismissed because Mr. Wilkinson's allegation that he had not had an erection in almost a year, without more, did not qualify as a serious medical need.

The Eighth Amendment's prohibition against "cruel and unusual punishments" protects prisoners from "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  A deliberate indifference claim is comprised of three elements:  (1) an objectively serious medical need, (2) the defendants' deliberate indifference to that need, and (3) a causal link between the defendant's indifference and the plaintiff's injury.  *See Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).  The second of these elements requires (1) the defendant's subjective knowledge of a risk of serious harm and (2) disregard of that risk (3) by conduct that is more than gross negligence.  *Id.* at 1327.

The complaint alleged that "Wilkinson . . . stated that he is having a problem with his penis because he cannot get an erection or stimulation."  Doc. 1 at 18 ¶ 58.  Mr. Wilkinson alleged that he "was seen by medical officials," who declined to treat him for the problem.  Although the medical officials' alleged statement that Mr. Wilkinson "should not have an erection because he is in prison" was callous, *id.*; even assuming, *arguendo*, that Mr. Wilkinson's need was objectively serious,

---

[7] Mr. Wilkinson's complaint contained allegations that he suffered from numerous other ailments, including migraine headaches and foot fungus.  Despite this, it is clear that the actual basis for his Eighth Amendment claim was prison staff's alleged failure to treat an erection problem.

the complaint nevertheless failed to plead how the defendants' decision not to administer treatment was more than grossly negligent. *See Goebert*, 510 F.3d at 1327. Accordingly, we affirm the district court's dismissal of these claims.

F.

Finally, Mr. Wilkinson challenges the disposition of his claims against SBCF's Chaplain Ojukwu. Mr. Wilkinson met with and wrote to Chaplain Ojukwu repeatedly, requesting that he and his fellow inmates who practiced Santeria be permitted to celebrate holy days. Chaplain Ojukwu, Mr. Wilkinson alleged, denied each of his requests, including his requests that the inmates be permitted to celebrate as a community, fast and feast in honor of Orisha Babalu-Aye, and obtain certain religious effects to facilitate their worship. Mr. Wilkinson further alleged that Chaplain Ojukwu approved the celebration of holy days for inmates who practiced other religions, specifically those practicing Orthodox Judaism and Islam. Finally, Mr. Wilkinson alleged that, in retaliation for his repeated requests and grievances, Chaplain Ojukwu facilitated the ultimate cancellation of a Santeria religious service.

As a preliminary matter, we note that the district court permitted Mr. Wilkinson's claim of denial of religious freedom to proceed beyond the court's screening pursuant to § 1915, but nowhere in any of the magistrate judge's or district court's orders can we discern when or how the court disposed of Mr.

14

Wilkinson's claims that Chaplain Ojukwu violated his right to equal protection (Claims 2, 14, 26) and retaliated against him for filing administrative grievances (Claim 35). Without a roadmap for determining the stage at which these claims were adjudicated, or on what basis, we cannot meaningfully review the district court's decision. Accordingly, we vacate the district court's judgment as to these claims and remand for further proceedings.

We turn now to the district court's order granting summary judgment in favor of Chaplain Ojukwu on Mr. Wilkinson's free exercise claim. We review the district court's summary adjudication *de novo*, drawing all inferences and reviewing all evidence in the light most favorable to the non-moving party. *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The district court, emphasizing that Chaplain Ojukwu merely implemented policies that the prison's administrators set, concluded that Mr. Wilkinson failed to put forth evidence that the chaplain's conduct substantially burdened his religious exercise. The scope of Chaplain Ojukwu's discretion, however, is immaterial to whether his denial of Mr. Wilkinson's request to celebrate Santeria holy days caused a substantial burden on his religious exercise. That inquiry is wholly

15

distinct from an inquiry into whether Chaplain Ojukwu reasonably denied Mr. Wilkinson's requests based on the materials provided to him by SBCF administration.

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person . . . is in furtherance of a compelling governmental interest; and . . . is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc-1(a).  The Act "reanimated the strict scrutiny long applied to the states in disputes regarding the free exercise of religion both before and after" the Supreme Court decided in *Employment Division v. Smith*, 494 U.S. 872 (1990), that the United States Constitution's Free Exercise Clause typically does not shield religiously motivated conduct from burdens imposed by generally applicable laws.  *Benning v. Georgia*, 391 F.3d 1299, 1306 (11th Cir. 2004).[8]

In examining whether conduct violates RLUIPA's mandate, we first analyze two elements:  (1) whether the plaintiff has identified a sincere religious exercise

---

[8] As a result, if a plaintiff cannot meet the RLUIPA standards, he also cannot satisfy general Free Exercise Clause elements.  We accordingly reject Mr. Wilkinson's contention that he need not show a substantial burden on the exercise of his religion.  He must; and although we do not decide today whether he can show that the Secretary or GEO substantially burdened his religious exercise, we conclude he has put forth sufficient evidence to create a genuine issue of fact regarding whether Chaplain Ojukwu's conduct did so.

16

or belief and (2) whether the government has substantially burdened that exercise or belief. *See Rich*, 716 F.3d at 532. If these elements are satisfied, we then analyze two additional elements, for which the defendant bears the burden of proof: (1) whether the conduct was in furtherance of a compelling governmental interest and (2) whether the conduct was the least restrictive means of furthering that interest. *See id.* We address these elements in turn.

Mr. Wilkinson identified his sincere religious exercise as celebrating holy days for Orishas Chango and Babalu-Aye. He asked to celebrate alongside two other inmate Santeria practitioners. *See* Doc. 1 at 7 ¶ 13 (stating inmates had a meeting with the chaplain about "their request to celebrate Santeria religious holy day"; Mr. Wilkinson complained that the chaplain "still will not allow us to celebrate" the holy days; Chaplain Ojukwu ended the meeting saying he "was not allowing them to celebrate any religious holy days"). Put differently, Mr. Wilkinson maintains that his sincere religious exercise is celebrating these holy days with the other inmates who practice Santeria. *See id.* ¶ 14 ("Wilkinson is thinking about Chaplain Ojukwu's refusal to allow him, and other Santeria followers to celebrate their religious holy day for Orisha Chango on December 4, 2009."); ¶ 20 ("Wilkinson is thinking about his religious belief, and . . . . is concerned about not having enough time to prepare for the holy day if Chaplain Ojukwu changes his mind, and grants them permission for the celebration."); ¶ 30

17

("Wilkinson requested the . . . Chaplain['s] assistance by providing a meal to their feast or allow[ing Wilkinson's] family to donate the meal for the entire Santeria community."). His inability to do this, he says, violated his religious beliefs and his right to freely exercise them. The record is devoid of any evidence that Mr. Wilkinson's beliefs are insincere. Accordingly, we are bound to accept Mr. Wilkinson's description of his sincere religious exercise.

Turning to the second inquiry — whether Chaplain Ojukwu substantially burdened his religious exercise — the evidence is undisputed that Chaplain Ojukwu denied outright Mr. Wilkinson's requests to celebrate two holy days with his SBCF Santeria community. An absolute denial of the opportunity to celebrate is "more than . . . incidental" and "place[s] more than an inconvenience on religious exercise." *Davila v. Gladden*, 777 F.3d 1198, 1205 (11th Cir. 2015) (internal quotation marks omitted). Indeed, it "significantly hampered [Mr. Wilkinson's] religious practice," thereby satisfying the substantial burden threshold. *Id.* (internal quotation marks omitted). Chaplain Ojukwu contends, as the district court concluded, that Mr. Wilkinson's religious exercise was not substantially burdened because Chaplain Ojukwu did not prevent him from observing the holy days in private. But Mr. Wilkinson has drawn a line between what comports with his religious beliefs (a celebration with the SBCF Santeria community) and what does not (inability to celebrate with this community), "and it

18

is not for us to say that the line he drew was an unreasonable one." *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 716 (1981); *see Davila*, 777 F.3d at 1204 ("[W]e look only to see whether the claimant is (in essence) seeking to perpetrate a fraud on the court — whether he actually holds the beliefs he claims to hold." (internal quotation marks omitted)).  Thus, Mr. Wilkinson has shown at this stage in the litigation that his religious exercise was substantially burdened.

Chaplain Ojukwu could still be entitled to summary judgment if he could establish as a matter of law that his denial was "in furtherance of a compelling governmental interest" and "the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc-1(a)(1), (2).  The district court emphasized that security concerns prevented the chaplain and other officials from honoring several of Mr. Wilkinson's requests, including his request that his family be able to donate a meal and his request for a number of religious effects.  Even accepting security concerns as a compelling governmental interest,[9] we are unconvinced that the outright denial of Mr. Wilkinson's requests to celebrate two holy days in the company of the SBCF Santeria community, including by fasting, feasting, and amassing some religious effects was, as a matter of law, the least restrictive means of furthering SBCF's security interests.  *See Burwell v. Hobby*

---

[9] We previously have stated that a defendant's "generalized statement of interests" in security, "unsupported by specific and reliable evidence, is not sufficient to show that the prison restriction furthered a compelling governmental interest."  *Davila*, 777 F.3d at 1206.  Indeed, "prison officials cannot simply utter the magic words 'security and costs' and as a result receive unlimited deference from those of us charged with resolving these disputes."  *Id.*

*Lobby Stores, Inc.*, 134 S. Ct. 2751, 2780 (2014) ("The least-restrictive-means standard is exceptionally demanding."). Indeed, Chaplain Ojukwu has failed to show, as he must, "'that [SBCF's religious services] lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion'" by Mr. Wilkinson. *Holt v. Hobbs*, 135 S. Ct. 853, 864 (2015) (quoting *Hobby Lobby*, 134 S. Ct. at 2780). Because Chaplain Ojukwu has not met his burden of establishing these two elements as a matter of law, we conclude summary adjudication was inappropriate.

III.

For all of the foregoing reasons, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART, VACATED IN PART, REMANDED.**