In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-3121

PRINCE ATUM-RA UHURU MUTAWAKKIL, also known as
NORMAN C. GREEN, JR.,

*Plaintiff-Appellant,*

*v.*

PETER HUIBREGTSE, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 11-cv-471-bbc — **Barbara B. Crabb**, *Judge*.

SUBMITTED AUGUST 15, 2013 — DECIDED AUGUST 19, 2013

Before EASTERBROOK, *Chief Judge*, and WOOD and
HAMILTON, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Norman C. Green, Jr., was
convicted of first-degree murder and sentenced to a long
term of imprisonment in Wisconsin. While an inmate, Green
decided to adopt what he calls a "spiritual name": Prince
Atum-Ra Uhuru Mutawakkil. Atum-Ra was an Egyptian de-
ity representing a fusion of the gods Atum and Ra; uhuru is

the Swahili word for freedom; and al-Mutawakkil was an Abbasid caliph who ruled in Samarra during the ninth century of the Christian calendar. The addition of "Prince" is a mystery; the United States does not have a royal house from which plaintiff could be descended. The four parts of his adopted name come from different regions and traditions; plaintiff does not contend that he chose the name as part of his devotion to a particular faith—though he does describe his beliefs, which he calls "The Divine Vision of Growth & Development", as religious. For current purposes we refer to plaintiff as Mutawakkil, because that is his preference.

Mutawakkil's suit presents several claims that do not require discussion in a published opinion. A short order issued contemporaneously addresses them. The one argument that justifies a precedential opinion is his contention that either the Constitution or the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc to 2000cc–5, requires the prison to permit him to be known by his spiritual name alone. The state's current policy is to permit an inmate to use the name on the judgment of conviction (the "committed name"), or the committed name in conjunction with a second name (whether or not the second name is religiously inspired), but not to use a second name by itself unless a court grants a petition for change of name. In other words, Wisconsin's prisons do not permit their inmates to employ the common-law approach under which anyone may change his name by using a new one consistently, without trying to deceive someone else. See *State v. Hansford*, 219 Wis. 2d 226 (1998). Prisoners may change their names only through an application to the judiciary under Wis. Stat. §786.36.

Mutawakkil tells us that he is willing to use both names inside the prison, though he would prefer not to, but suffers injury when the state insists that others follow the same rule. For example, a letter addressed to "Prince Atum-Ra Uhuru Mutawakkil" will be returned to the sender, while a letter addressed to "Norman C. Green, Jr." or to both names will be delivered to him.

*Azeez v. Fairman*, 795 F.2d 1296 (7th Cir. 1986), holds that a materially identical policy used by Illinois does not violate either the speech clause or the free-exercise clause of the first amendment (applied to the states by the fourteenth). We concluded in *Azeez* that legitimate interests in maintaining security and order within prisons support requiring inmates to use their committed names unless a state court approves a change-of-name application. Nothing the Supreme Court has decided since 1986 calls *Azeez* into question, so it controls Mutawakkil's constitutional contentions.

He insists that Wisconsin's policy violates the equal protection clause, even if not the first amendment, because he thinks that "Norman C. Green, Jr." sounds like a white man's name, and he is not white. Yet it is the name his parents gave him; it was not forced on him by the state. He could have changed his name in common-law fashion before committing murder. Mutawakkil does not contend that any inmate, of any race (or any religion), is allowed to change his name on his own say-so after being convicted and demand that the prison recognize the self-selected name to the exclusion of the committed name. The complaint does not make out a plausible claim of racial discrimination.

This leaves the statute, which often goes by the unpronounceable initialism RLUIPA but which we call "the Act"

so that the opinion can be understood by normal people. Section 2000cc–1(a) provides this general rule: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title … unless the government demonstrates that imposition of the burden on that person— (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." See generally *Cutter v. Wilkinson*, 544 U.S. 709 (2005). The inmate's burden under the Act is lighter than the burden of showing a violation of the Constitution. The district court granted summary judgment against Mutawakkil after concluding that he had not shown a "substantial burden" from the prison's use of his committed name, alone or in conjunction with his spiritual name.

A religion calling for use of a religious name only could lead to a serious claim that a policy's such as Wisconsin's imposes a "substantial burden" if it is hard to persuade a court to change a name formally. But Mutawakkil does not contend that his beliefs make the use of "Norman C. Green, Jr." odious. He says that it would be preferable (from his perspective) if he were allowed to use just his spiritual name, and if he did not have to make sure that his correspondents know about the prison's policy, but preference or convenience is not the standard. The Act requires an inmate to show that the policy creates a "substantial burden" on "religious exercise". Wisconsin's does not—not for Mutawakkil, anyway.

At least one other court of appeals has held that prisons are entitled to use committed-name or dual-name policies under the Religious Freedom Restoration Act, 42 U.S.C.

§§ 2000bb to 2000bb–4, which is substantively identical to the Religious Land Use and Institutionalized Persons Act. See *Fawaad v. Jones*, 81 F.3d 1084, 1086–87 (11th Cir. 1996). We agree with *Fawaad*. There is no authority to the contrary.

For an inmate who finds his committed name religiously intolerable, the statutory question would be whether the need to use the judicial name-change mechanism creates a "substantial burden". That could depend on how readily state courts accommodate inmates' requests for changes of name. Mutawakkil tells us that he has never sought a formal change, because *Williams v. Racine County Circuit Court*, 197 Wis. 2d 841 (Wis. App. 1995), establishes that inmates' requests for changes of name cannot be granted. That is not what *Williams* holds, however. The circuit court denied one inmate's request, holding that a new name could be confusing to the prison and that the inmate did not have a good reason for his request. The court of appeals held that the circuit court's decision was not an abuse of discretion. *Williams* did not say that a circuit court is *forbidden* to approve a new name for an inmate. Nor did that case deal with a prisoner's contention that religious beliefs lay behind his desire to use a different name. (The name Williams proposed was "Romanceo Sir Tasty Maxibillion"; he was trying to play games, not to exercise a sincerely held religious belief.)

Mutawakkil should present his position to the state judiciary rather than asking federal judges to assume that state judges would be unduly hostile to religiously inspired requests. He did ask the state judiciary to change the name on his judgment of conviction, and the court of appeals held that such a request must be entertained. *State v. Green*, 288 Wis. 2d 658 (Wis. App. 2005). The circuit court then added

"aka Prince Atum-Ra Uhuru Mutawakkil" to the judgment. That addition does not enable him to stop using "Norman C. Green, Jr." within the prison system. But the procedure under Wis. Stat. §786.36 could do so. The best way for Mutawakkil to find out what would happen, if he tried, is to try.

As far as federal law is concerned, it does not matter how the state judiciary would respond to a name-change application. Wisconsin's policy does not create a "substantial burden" for Mutawakkil. Whether it would do so for some other inmate is a question we need not address.

AFFIRMED