In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1928

MICHAEL L. THOMPSON,

*Plaintiff-Appellant,*

*v.*

WILLIAM HOLM, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 13-CV-930 — **Nancy Joseph**, *Magistrate Judge*.

SUBMITTED DECEMBER 4, 2015[*]— DECIDED JANUARY 4, 2016

Before RIPPLE, ROVNER, and WILLIAMS, *Circuit Judges*.

ROVNER, *Circuit Judge*. Michael Thompson, a Muslim in-mate incarcerated at Waupun Correctional Institution in Wisconsin, sued members of the prison staff for violating his right under the First Amendment to exercise his religion

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. See FED. R. APP. P. 34(a)(2)(C).

freely. The violation occurred, Thompson says, when for two days prison staff prevented him from fasting properly during Ramadan. The district court granted the defendants' motion for summary judgment. Because Thompson presented evidence from which a jury could reasonably find that the defendants violated his free exercise rights, we vacate the judgment and remand for further proceedings.

Because we are reviewing a grant of summary judgment, we recount the facts in the light most favorable to Thompson, the nonmoving party. *See Tradesman Int'l, Inc. v. Black*, 724 F.3d 1004, 1009 (7th Cir. 2013). A central religious practice of the Islamic faith is a sunrise-to-sunset fast during the month of Ramadan. The prison normally accommodates this practice by providing Ramadan "meal bags" at sunset to each Muslim prisoner listed as eligible. The prison's chaplain determines eligibility. Each Ramadan meal bag contains two meals: the post-sunset dinner and the next morning's pre-sunrise breakfast. A prisoner who eats at the prison cafeteria during Ramadan forfeits his right to the meal bags for the rest of the month-long fast. Thompson, a practicing Muslim, began fasting for Ramadan after sunrise on August 11, 2010—the first day of Ramadan. He received his daily meal bags until August 21, about one-third into the month.

The events leading up to the interruption of his meal bags on August 21 are disputed. Thompson says that shortly before August 21, as he was on his way back to his cell, Randall Lashock, a prison guard, handed him a meal bag. When Thompson arrived at his cell, he found that a guard had already left a meal bag for him there. Thompson could not leave his cell to return the extra bag without risking a conduct violation, so he left one of the two bags unopened

for Lashock to retrieve. Lashock asserts that when he later retrieved that extra meal bag from Thompson's cell, he found Thompson eating from both bags.

Thompson received no meal bags on August 21 and 22. Lashock was supposed to deliver the Ramadan meal bags to every prisoner on the eligibility list. But on those two days, Lashock brought Thompson nothing, even though, some evidence suggests, he remained on the list. Receiving no meals, and learning from Sergeants Bruce Bleich and Matthew Larson when he complained to them that he would have to go to the cafeteria if he wanted to eat, Thompson felt pressure to break his fast by going to the cafeteria. But he knew that under the prison's policy he could not do that without forfeiting meal bags for the rest of the month-long fast. He also had hunger pangs and felt tired and unwell. Because of his hunger, exhaustion, and anxiety, he missed one of his morning prayers and did not properly experience Ramadan, which is meant to be a time of peace and focus.

The reason that Lashock kept the meal bags from Thompson is also contested. Lashock told Thompson that his name was removed from the eligibility list because he had stolen the extra bag; Lashock swears that he wrote a conduct report accusing Thompson of the theft. But the defendants admit that no one has found any report of this accusation. And in an affidavit the prison's current chaplain, who checked the records of the eligibility lists, said that he found no evidence of a theft complaint about Thompson or his removal from the Ramadan list.

While he was receiving no meal bags, Thompson asked other prison officials to explain why Lashock was not bringing him food, and those explanations, too, are now disputed.

Thompson says that Sergeants Bleich and Larson told him that Captain William Holm had ordered his name removed from the list because he had stolen a meal bag; they too refused to bring him any meals. But Holm now asserts, as do Lashock and the sergeants, that they did not remove Thompson from the list and had no authority to do so; only the chaplain could do that.

Also, as he was receiving no meals, Thompson filed two formal, written complaints that themselves produced conflicting results. The investigator of the first complaint reported that, according to Holm, Thompson had not been removed from the Ramadan list but that he might receive a conduct report for theft of a meal bag. The investigator of the second complaint reported, however, that Thompson was taken off the Ramadan list for two days. Everyone agrees, though, that on August 23, Thompson received a Ramadan meal bag at sunset and continued to receive a bag each day until the end of Ramadan.

Thompson sued Lashock, Holm, Bleich, and Larson under 42 U.S.C. § 1983 for violating his First Amendment rights, and the defendants moved for summary judgment. (Other claims are not at issue on appeal.) They argued: (1) the lack of meal bags for two days did not substantially burden Thompson's free-exercise rights; (2) any burden was reasonably related to punishing his theft, a legitimate penological interest; (3) none of the defendants was personally involved in the alleged constitutional violation; (4) damages, the only requested relief, were unavailable because Thompson could not prove physical injury or that the defendants had acted recklessly or with "callous indifference"; and (5) qualified immunity shielded them.

Thompson responded that the defendants unlawfully withheld his meal bags. He countered the defendants' five arguments as follows: (1) by forcing him to choose between adequate nutrition and a central tenant of his religion, the defendants substantially burdened his free-exercise rights; (2) no valid penological interest justified the burden; (3) the evidence reasonably reflects that the defendants were personally involved in withholding the bags to pressure him to break his fast; (4) he is entitled to punitive damages because the defendants intentionally violated his rights; and (5) qualified immunity is unavailable because accommodation of a prisoner's religious diet is a clearly established right.

A magistrate judge, presiding by consent, granted the defendants' motion for summary judgment. The judge ruled that receiving no meal bags for just two days was not a substantial burden on Thompson's free exercise rights because he kept fasting, praying, and reading the Koran. The judge reached no other arguments.

On appeal Thompson challenges the entry of summary judgment. To survive summary judgment, Thompson had to submit evidence from which a jury could reasonably find that the defendants personally and unjustifiably placed a substantial burden on his religious practices. *See, e.g., Hernandez v. Comm'n of Internal Revenue*, 490 U.S. 680, 699 (1989); *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011); *Nelson v. Miller*, 570 F.3d 868, 879–80 (7th Cir. 2009); *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006). A substantial burden "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd.*, 450 U.S. 707, 717–18 (1981); *see also Nelson*, 570 F.3d at 878 (7th Cir. 2009); *Koger v. Bryan*, 523 F.3d 789, 799 (7th Cir.

2008). A burden is unjustified if it is not reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89–91 (1987).

We begin our analysis by asking whether the denial of meal bags substantially burdened Thompson's free exercise rights. The answer is *yes*. Without the meal bags, Thompson was forced to choose between foregoing adequate nutrition or violating a central tenet of his religion. Facing that choice for "only" two days was not, as defendants argue, a "de minimis" burden. Not only did Thompson receive no proper meal for 55 hours, leaving him weak and tired, he did not know if he would ever be put back on the Ramadan list and get regular food. This uncertainty put pressure on him to resign himself to the cafeteria; the anxiety left him unable to practice Ramadan properly.

We have repeatedly held that forcing an inmate to choose between daily nutrition and religious practice is a substantial burden. *See Nelson*, 570 F.3d at 879 (ruling that inmate's free exercise rights were substantially burdened when prison forced him to choose between his religious practice and adequate nutrition by denying his request for meatless meals on Fridays); *Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir. 1990) (reasoning that failure to ensure that preparation of meals kept pork separate from other food substantially burdened a Muslim prisoner's religious practice because it forced him to "an improper choice between adequate nutrition and observance of the tenets of his faith"); *see also Love v. Reed*, 216 F.3d 682, 689–690 (8th Cir. 2000) (ruling prison's failure to accommodate prisoner's religious diet substantially burdensome and rejecting prison's suggestion that the prisoner could fast as an alternative to the prison's accommodation of

the desired diet); *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987) ("Inmates … have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion.").

We next consider whether Thompson produced sufficient evidence that all the defendants were personally involved in imposing this burden. *See Knight v. Wiseman*, 590 F.3d 458, 462–63 (7th Cir. 2009). Once again, the answer is *yes*. We consider the defendants individually, beginning with Lashock. He was responsible for delivering the meal bags to all inmates on the eligibility list. Yet he personally denied them to Thompson for two days even though, as one could infer from the evidence, Thompson remained on the list. As to Holm, Thompson swears that Bleich and Larson told him that Holm personally removed him from the list, thus overriding the role of the chaplain. Moreover, a jury reasonably could infer from the conflicting grievance report investigations that Holm lied about whether he had removed Thompson from the meal list. Finally, as to Bleich and Larson, they also bear responsibility for depriving Thompson of his food. By (falsely) telling Thompson that Holm had removed him from the religious meal list, refusing to bring him any meals, and warning him to go to the cafeteria if he wanted to eat, a jury reasonably could infer that they were involved in a joint effort to pressure Thompson to break his fast. From this evidence, construed in Thompson's favor, a jury could find that all the defendants were personally involved in intentionally denying Thompson the meal bags.

The record also undermines the defendants' argument that, because Thompson supposedly stole a meal bag, withholding his meal bags for two days was justified. The record,

construed favorably to Thompson, supports an inference that Lashock fabricated the charge of theft: Although he asserts that he wrote a conduct report for the theft, none exists, and the chaplains' records contain no record of theft. If Lashock lied about the theft, his dishonesty can imply that he is guilty of intentionally withholding the bag. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000) (observing "the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty…as affirmative evidence of guilt" (internal quotation marks and citations omitted)). In any case, without a finding of theft, denying him food and removing Thompson from the meal list is not justified. A prison official's mere belief in an inmate's guilt is insufficient to justify denying a liberty interest that the inmate retains. *See Gilbert v. Coo*k, 512 F.3d 899, 901 (7th Cir. 2008) ("One major function of the due process clause is to ensure that a wrongdoer's punishment comes after a hearing, rather than being meted out on the spot by a public official[] … .").

Their next argument is that damages are unavailable. But Thompson's evidence, construed favorably to him, supports the inference the defendants acted intentionally and thus refutes the contention that damages are unavailable. If a trier of fact credits Thompson's evidence that the defendants intentionally violated his rights, he may receive both nominal and punitive damages. *See Thomas v. Ill.*, 697 F.3d 612, 614 (7th Cir. 2012); *Calhoun v. DeTella*, 319 F.3d 936, 941–42 (7th Cir. 2003); *Rowe v. Shake*, 196 F.3d 778, 781 (7th Cir. 1999).

The defendants' final argument is that qualified immunity shields them. But we have held that "a prisoner's religious dietary practice is substantially burdened when the prison

forces him to choose between his religious practice and adequate nutrition." *Nelson*, 570 F.3d at 879; *see also Hunafa*, 907 F.2d at 47 (7th Cir. 1990). Other circuits also observe that a prisoner has a "clearly established … right to a diet consistent with his … religious scruples," including proper food during Ramadan. *Ford v. McGinnis*, 352 F.3d 582, 597 (2nd Cir. 2003); *see also Lovelace*, 472 F.3d at 198–99; *Love*, 216 F.3d at 689–690; *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1212–13 (10th Cir. 1999); *McElyea*, 833 F.2d at 198. Because the evidence supports an inference that the defendants intentionally and unjustifiably forced this burdensome choice on Thompson, qualified immunity is unavailable.

We end with two observations. First, we repeat that we have construed the facts in the light most favorable to Thompson. A jury may find the facts to be otherwise. Second, we encourage the district court on remand to consider recruiting counsel for Thompson.

Accordingly, we VACATE the judgment. This case is REMANDED for further proceedings consistent with this order.