In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 17-2836

ROMAN LEE JONES,

*Plaintiff-Appellee,*

*v.*

ROBERT E. CARTER, JR., Commissioner, Indiana Department of Correction,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 16 C 2887 — **William T. Lawrence**, *Judge.*

———————————

ARGUED SEPTEMBER 7, 2018 — DECIDED FEBRUARY 15, 2019

———————————

Before WOOD, *Chief Judge*, and ROVNER and BRENNAN, *Circuit Judges*.

WOOD, *Chief Judge*. While a serving of meat from a prison kitchen would not prompt most Americans to run to a federal courthouse, it raises a critical problem for Indiana inmate Roman Lee Jones. Jones adheres to a sect of Islam that requires its members to follow a diet that regularly includes halal meat. It would not cost the state of Indiana a single penny to

provide Jones with the diet he has requested. The only question before us in this appeal is whether Indiana's refusal to provide Jones with meat substantially burdens his exercise of religion under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1. We hold that it does.

Jones observes Islamic dietary restrictions, which forbid the consumption of certain foods and require that others be prepared in accordance with Islamic law—that is, his food must be halal. Since there is overlap in halal and Jewish kosher requirements, some Muslims—including Jones—find kosher food to be an acceptable alternative to a purely halal diet. (There are differences, to be sure: followers of a kosher diet may not consume meat and dairy products together, while followers of halal may do so; alcohol is permissible for kosher, but not for halal; and the lists of permissible animals and seafoods differ slightly. See *Halal vs Kosher*, DIFFEN.COM, https://www.diffen.com/difference/Halal_vs_Kosher (last visited February 14, 2019). Jones does not argue that these differences matter for his prison diet.)

The Indiana Department of Correction ("DOC") formerly provided pre-packaged kosher meal trays, which included kosher meat, to all inmates who requested them. As demand for the kosher trays went up, however, so did the cost, which rose to between $40,000 and $60,000 a month on top of the per capita amount the DOC pays its contractor for standard meals. Unhappy with this trend, the DOC stopped offering the kosher trays and put all the affected inmates on a vegan diet (that is, one with no products made or derived from animals).

That move satisfied no one: a class of inmates seeking kosher food sued the DOC and prevailed under RLUIPA in *Willis v. Commissioner, Indiana Department of Correction.* 753 F. Supp. 2d 768, 772 (S.D. Ind. 2010). Rather than go back to providing everyone with kosher trays, the DOC worked out a new arrangement with its contractor so that kosher meals are now included in the per capita amount it pays the contractor. The DOC built kosher kitchens at a few of its facilities and moved as many kosher inmates into those facilities as possible. Inmates who could not be moved would continue to receive the kosher trays, but inmates (including Jones) in a facility with a kosher kitchen were given only the option of eating the food prepared there. That food, however, is vegetarian (*i.e.* plant-derived, plus animal products not requiring slaughter, such as eggs, milk, cheese, and honey).

While many Jewish and Muslim inmates would find a nutritionally adequate vegetarian diet that otherwise satisfies kosher standards to be fully compatible with their beliefs, Jones does not. Jones and the other members of his sect within Islam believe that the holy Qur'an plainly commands him to "eat what is on earth, Lawful and good"—including meat. Some Muslim scholars support Jones's interpretation, and the Imam employed by the DOC agreed that Jones's view is "a valid opinion" shared by some other Muslims, though not the Imam himself. Jones does not take the position that he needs to eat meat with every meal, but he believes it must be a regular part of his diet. After the DOC refused his request for kosher trays that include meat, he filed this suit.

Under RLUIPA, the DOC cannot "impose a substantial burden on the religious exercise of a person residing in or confined to an institution … unless the [DOC] demonstrates that

[it] … (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1. Following a brief trial, the district court held in favor of Jones and ordered the DOC to give Jones at least eight meals a week that "contain kosher or halal meat." The judge left it up to DOC to decide on the most effective way to do this, but he specified that one permissible response would be to send Jones the kosher trays the DOC was already providing to inmates at facilities without kosher kitchens. The record indicates that this would not impose any incremental cost on the DOC. The court found that by requiring Jones to engage in conduct—refraining from all meat—that violates his sincerely held religious belief, the DOC had substantially burdened his religious exercise and on this record the DOC lacked a compelling government interest to justify that burden.

On appeal, the DOC does not contest the sincerity of Jones's belief or the district court's finding that the DOC lacked a sufficient justification for its treatment of Jones. The sole issue the DOC raises is whether the district court erred in holding that Jones was substantially burdened by the vegetarian kosher diet when, as the DOC argues, he could have purchased the halal meat he needs to supplement his diet at the prison commissary. The DOC characterizes Jones's lack of meat as the result of "his own spending choices," not the result of any DOC action. It urges us to find that nothing less than the coercive pressure of the choice between violating his religion and facing starvation qualifies as a substantial burden under RLUIPA.

For a time, there was some confusion among the circuits about what constitutes a substantial burden under RLUIPA.

We interpreted the language as requiring that the government's action rendered the religious exercise "effectively impracticable." *Nelson v. Miller*, 570 F.3d 868, 878 (7th Cir. 2009). Other circuits developed different tests. See, *e.g.*, *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1313 (10th Cir. 2010) (government must require, prohibit, or substantially pressure religiously relevant conduct); *Moussazadeh v. Texas Dep't of Criminal Justice*, 703 F.3d 781, 793 (5th Cir. 2012) (government must influence an adherent to act or force him to choose between a generally available non-trivial benefit and religious beliefs); *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 814 (8th Cir. 2008) (government must significantly inhibit, meaningfully curtail, or deny reasonable opportunities for religious exercise). This confusion was largely dispelled, however, in two recent decisions from the Supreme Court: *Holt v. Hobbs*, 135 S. Ct. 853 (2015), and *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014). We recognized in *Schlemm v. Wall* that *Holt* and *Hobby Lobby* "articulate[d] a standard much easier to satisfy" than our former search for something rendering the religious exercise "effectively impracticable." 784 F.3d 362, 364 (7th Cir. 2015).

In *Hobby Lobby*, a case involving RLUIPA's sister statute, the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1, three closely held corporations faced the choice between providing contraceptive coverage for their employees in violation of their religious beliefs or paying a substantial fine that would enable them to omit the coverage to which they objected. The Supreme Court found that this choice was no choice at all: it imposed a substantial burden on the owners' religious exercise, and the government had not shown that it was the least restrictive means of serving the government's (assumed) compelling interest. 134 S. Ct. at

2759. The Court rejected the suggestion that the corporations could "eliminate[] the substantial burden" and avoid the fine by dropping employee health insurance entirely since that would also cause economic harm. *Id.* at 2776–77. In so ruling, the Court emphasized that Congress explicitly stated that RFRA should "be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." *Id.* at 2762 (quoting § 2000cc-3(g)).

The next year, in *Holt*, the Court considered the case of a Muslim inmate who wanted to grow a 1/2-inch beard in accordance with his religious beliefs. Such a beard, however, offended the grooming policy of the Arkansas Department of Corrections, and so the Department refused to allow him to grow it. When the case arrived at the Supreme Court, the Court read RLUIPA as an "expansive protection for religious liberty" and held that the inmate "easily" demonstrated a substantial burden because he faced "serious disciplinary action" if he violated the grooming policy and grew the beard. 135 S. Ct. at 860, 862. The Court further rejected attempts to call the burden of shaving "slight" if shaving was not absolutely prohibited by the inmate's beliefs, writing that "RLUIPA … applies to an exercise of religion regardless of whether it is 'compelled.'" *Id.* at 862.

The burdens on the person asserting religious rights in *Holt* and *Hobby Lobby* involved large fines and significant disciplinary consequences. But the Court did not indicate that pressures of that severity represented the floor for finding a substantial burden under RFRA or RLUIPA. To the contrary, the Court clarified that RLUIPA's substantial burden inquiry robustly supports inmate religious practice—it specifically

*disapproved* of the practice of offsetting against the burden imposed by the rule any other religious accommodations offered or the strength of the religious command. These principles govern Jones's case and indicate that the DOC's food policy is placing a substantial burden on him.

The DOC estimates it will cost Jones a few dollars a day ($14.00 a week) to pay for his own halal meat at the commissary. While that amount may seem minor in comparison to the multi-million-dollar fine Hobby Lobby faced, it is a large amount for Jones. He makes, at most, $8.40 per week at his prison job. Even though that amount is supplemented by sporadic funds sent from his friends and family, Jones cannot reliably afford to pay for the meat himself. The state is in effect demanding that Jones, uniquely among all inmates, zero out his account and forgo purchasing other items such as hygiene products or over-the-counter medicine, if he wants to avoid a diet that violates his religious beliefs.

When the state forces a prisoner to choose between adequate nutrition and religious practice, it is imposing a substantial burden on his religious practice under the rules announced in *Hobby Lobby* and *Holt*. *Thompson v. Holm*, 809 F.3d 376, 380 (7th Cir. 2016) (collecting cases). After these recent cases, there can be no doubt that when the state forces a prisoner to give away his last dime so that his daily meals will not violate his religious practice, it is imposing a substantial burden. We therefore have no need here to decide whether a truly negligible or unquestionably affordable fine would similarly be subject to attack under RLUIPA.

Jones's case is not near any relevant line. Indeed, even before *Hobby Lobby* and *Holt*, other circuits found that asking prisoners to pay daily for religiously compliant diets was a

substantial burden, especially where an inmate was indigent. See *Moussazadeh*, 703 F.3d at 793–94 (holding it is a substantial burden to require an inmate to pay for a kosher meal because daily meals are a generally available benefit); *Love v. Reed*, 216 F.3d 682, 689 (8th Cir. 2000) (rejecting the argument that the availability of food for purchase at the commissary alleviated the substantial burden on an indigent inmate); *Beerheide v. Suthers*, 286 F.3d 1179, 1188 (10th Cir. 2002) (calling a 25% co-payment program for kosher meals that would require even prisoners with financial support from their friends and family "to sacrifice nearly all of that income to maintain their religious duties" a "Hobson's choice rather than a true alternative"); *Abdulhaseeb*, 600 F.3d at 1317 ("[A]ny ability to purchase is chimerical where a plaintiff is indigent….").

The dissent suggests that the record before us is insufficient to hold that Jones is substantially burdened, and that we ought to require a showing of indigency or other hardship to satisfy the substantial burden test. To support the suggestion that the court ought to further scrutinize Jones's ability to pay, the dissent relies on pre-*Hobby Lobby* cases from our sister circuits that required similar findings of indigency for inmates requesting religious accommodations. See *infra* at 11 (citing *Abdulhaseeb*, 600 F.3d at 1317–18, and *Patel*, 515 F.3d at 814).

When the Supreme Court was presented with a far sparser record supporting the claimed substantial burden in *Hobby Lobby,* however, the Court declined to inquire further into the question of ability to pay, despite criticism in dissent both at the Court and in the Tenth Circuit. Instead, it gave greater weight to the religious freedom concerns and implicitly disapproved the ability-to-pay aspect of the earlier opinions from our sister circuits. *Hobby Lobby*, 134 S. Ct. at 2775–76

(finding the large fines were clearly a substantial burden without requiring Hobby Lobby to prove its inability to pay or whether the fines would be "merely" significant or actually crippling); *id* at 2798 (Ginsburg, J., dissenting) (criticizing the majority opinion for "barely paus[ing] to inquire whether any burden imposed … is substantial"); *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1164 (10th Cir. 2013) (Briscoe, J., concurring in part and dissenting in part) ("At the hearing on plaintiffs' motion for preliminary injunction, plaintiffs presented no evidence of any kind. … As a result, we know very little about any of the important facts of this case" including evidence of substantial burden); *id.* at 1181, 1181 n.4 (10th Cir. 2013) (Matheson, J., concurring in part and dissenting in part) (expressing concern that "plaintiffs have provided almost no evidence" including "plaintiffs have failed, for example, to provide the district court with complete information about the financial strain they would bear"). The Supreme Court thus consciously chose not to require a demonstration of hardship—or detailed findings on finances—before determining that the fine at issue triggered protection for Hobby Lobby's owners. *Hobby Lobby*, 134 S. Ct. at 2759. Jones is entitled to no less. He has testified to his meager sources of income, and the state has confirmed that the cost to Jones of subsidizing his own religiously compelled diet would systematically outpace his reliable income. That would be enough under *Hobby Lobby* for the Supreme Court, and thus it is enough for us.

DOC's position also cannot be reconciled with the text of RLUIPA. The statute applies to "any exercise of religion," no matter which faith or specific practice. §2000cc-5(7)(A); see *Holt*, 135 S. Ct. at 860 (citing this language to reaffirm

RLUIPA's strength and breadth). Some religious diets pro-
hibit certain foods; others require complex preparation.
Jones's diet requires him to consume one additional item of
food beyond what he is currently being offered. We find no
principled reason for endorsing DOC's practice of withhold-
ing a readily available food for Jones—one that it is serving to
many other inmates. See *Willis*, 753 F. Supp. 2d at 772 (requir-
ing the Indiana DOC to provide inmates with kosher diets,
though it was substantially more burdensome on the state to
do so). See also *Moussazadeh*, 703 F.3d at 793–94 (emphasizing
that the denial of generally available benefits such as a daily
meal is always a substantial burden, since such action is akin
to denying the otherwise available benefits in *Sherbert v. Ver-
ner*, 374 U.S. 398, 404 (1963), and *Thomas v. Review Board of the
Indiana Employment Security Division,* 450 U.S. 707, 717–18
(1981)).

The DOC's final pitch is that it should not have to "subsi-
dize" or "underwrite" Jones's religious diet. Perhaps it fears
escalating costs. It did not, however, appeal the question of
the state's interest. The district court held that on this record,
DOC did not demonstrate that any such risk exists, and we
have no reason to take issue with its conclusion. This is not a
class action, and Jones is asking only to receive the same ko-
sher trays that DOC is already providing to other inmates. If
enough other inmates come along and express the same reli-
giously based need, then the state always has the option of
adding halal or kosher meat to its new kitchens (if that ap-
pears to be the cost-effective way to handle the issue). But that
is not our case, and we see no reason to opine on a hypothet-
ical situation. That forbearance is especially appropriate given
the fact that Jones's belief that eating meat is a requirement

for devout Muslims appears to be a minority view within Islam.

We AFFIRM the judgment of the district court.

BRENNAN, *Circuit Judge*, dissenting. To prevail on an RLUIPA claim of this sort, an inmate must show his religious exercise has been substantially burdened; a lesser burden is insufficient. At issue in this case is whether the financial responsibility placed on inmate Jones to include halal meat in his diet rises to the level of a substantial burden. We do not have enough evidence to make that determination because the district court never reached the issue. Jones's claim should be remanded for the district court to conduct fact-finding as to whether he is indigent or suffers other financial hardship, and whether his religious exercise was substantially burdened.

Our court addressed RLUIPA's "substantial burden" requirement in *Schlemm v. Wall*, 784 F.3d 362 (7th Cir. 2015), in the wake of *Holt v. Hobbs*, 135 S.Ct. 853 (2015), and *Burwell v. Hobby Lobby Stores, Inc.*, 134 S.Ct. 2751 (2014). There we noted that while *Holt* held that the "substantial burden" requirement was met by a "serious violat[ion] [of] religious beliefs," what "serious" requires remained undefined. *Schlemm*, 784 F.3d at 364–65 (quoting *Holt*, 135 S.Ct. at 862, in turn quoting *Hobby Lobby*, 134 S.Ct. at 2775).

The majority opinion does not grapple with this unresolved question. Its interpretation of "substantial" effectively means that *any* burden on an inmate's religious diet, no matter how slight, violates RLUIPA. While acknowledging that *Holt* and *Hobby Lobby* "involved large fines and significant disciplinary consequences," the majority opinion states that the "pressures of that severity [do not] represent[] the floor for finding a substantial burden under RFRA or RLUIPA." Million dollar fines and serious prison disciplinary actions, as in *Hobby Lobby* and *Holt*, might not be the floor for

a substantial burden. But 42 U.S.C. § 2000cc-1 requires some sort of floor. Congress so provided when it incorporated a relative and proportionate term ("substantial") into the statute. The text of RLUIPA requires courts to assess the severity of the burden placed on an individual inmate, and whether that burden rises to the level of "substantial." Anything less risks rendering the statutory term "substantial" superfluous. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 174–79 (2012) (discussing the surplusage canon). This evaluation requires a full factual record, which we do not have here.

Other courts have considered two factors to determine whether a burden on an inmate's diet is "substantial": the religious meal options available, and the ability of the religious inmate to obtain them. *See Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1317–18 (10th Cir. 2010) ("First, any ability to purchase is chimerical where a plaintiff is indigent, as is Mr. Abdulhaseeb. Second, … [because] no Halal vendors have been approved by DOC … Mr. Abdulhaseeb could not have purchased halal foods even if he had funds."); *see also Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 814 (8th Cir. 2008) ("[The inmate] only offers his single, vague and unsupported statement about the potential cost, and the record offers no evidence regarding Patel's financial status. … Patel has not offered sufficient evidence to create a genuine issue of material fact … [to show he] has been substantially burdened.").[1] *Compare with Moussazadeh v. Texas Dept. of Criminal Justice*,

---

[1] Whether *Patel* will survive post-*Holt* and *Hobby Lobby* is currently on appeal in the Eighth Circuit. For that case's district court opinion, *see Muhammad v. Wheeler*, No. 5:15-cv-130-KGB/PSH, 2018 WL 1558279 (E.D. Ark. Mar. 30, 2018).

703 F.3d 781, 793–94 (5th Cir. 2012) (holding that denying a Jewish inmate free kosher meal trays available to all other Jewish inmates denies the inmate an "'essential' benefit given to every prisoner").[2] This court should adopt a similar standard.

The first inquiry can be assessed by examining the halal (or kosher, or other religious) options available in a prison's cafeteria or commissary. The parties do not dispute Jones has been housed in a prison facility with a vegetarian kosher kitchen and a commissary stocked with halal meat. Indeed, Jones purchased halal meat to supplement his vegetarian kosher meals. This option is available to all inmates in facilities with kosher kitchens. Rather than requesting a generally available benefit, Jones asks to be given for free what other inmates in his prison facility must purchase. *Cf. Moussazadeh*, 703 F.3d at 793 ("[D]enial of religiously sufficient food where it is a generally available benefit would constitute a substantial burden on the exercise of religion."). The second inquiry can be resolved by a showing of indigency or other hardship for the particular inmate. For Jones, that remains a genuine question of fact.

---

[2] The majority opinion cites *Moussazadeh* for the proposition that "the denial of generally available benefits such as a daily meal is always a substantial burden." But the Fifth Circuit in *Moussazadeh* was careful to distinguish the facts before it, in which a Jewish inmate was denied free kosher cafeteria trays, from those in *Patel*, where kosher and halal food was freely provided in the cafeteria "and satisfied all other Muslims in the prison, [but did not meet the] particularly nuanced version of halal food" preferred by the specific inmate. *Moussazadeh*, 703 F.3d at 794. Here, the parties do not dispute that in the DOC cafeteria Jones has access to free, nutritionally adequate, vegetarian kosher trays.

The majority opinion states that unless the district court is affirmed, Jones will be forced to "give away his last dime" to obtain halal meat. Were that true, the DOC's policy may very well impose a substantial burden on Jones. But because the district court never made any findings of fact on this topic, Jones's financial situation—and the severity of the burden commissary purchases place on him—is an unresolved fact dispute. The DOC submitted evidence tending to impeach Jones's narrative of financial difficulty: for example, Jones regularly purchased halal meat at the prison commissary as recently as nine months before his deposition in this case. The majority opinion notes Jones makes "at most, $8.40 per week at his prison job." Yet Jones continues to make regular commissary purchases of up to sixty dollars a month. This implies Jones has access to funds beyond his prison salary, possibly contributed by friends and family members. The majority opinion examines the conflicting testimony and resolves it in favor of Jones. But the district court never addressed this genuine issue of material fact in its opinion, and as a reviewing court, we are not in a position to do so. Because this remains unresolved, the severity of the burden placed on Jones's religious exercise by the DOC cannot be assessed as "substantial," or as insubstantial. We just do not know.

In addition to the claim's other elements, to recover in this lawsuit Jones should be required to show he is indigent and unable to acquire halal meat on his own. The district court did not hear the necessary evidence on the expenses of prison life and made no finding as to Jones's financial circumstances. Because halal meat options are readily available within the

facility where Jones is housed, remand is warranted for further fact-finding on these questions.

For these reasons, I respectfully dissent.