NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 20, 2019[*]
Decided March 28, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 17-2771

| | |
|---|---|
| ADAMA NJIE, | Appeal from the United States District |
|     *Plaintiff-Appellant*, | Court for the Central District of Illinois. |
| | |
|     *v.* | No. 14-1079 |
| | |
| STEPHANIE DORETHY, *et al.*, | James E. Shadid, |
|     *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Adama Njie, a Rastafarian, sued the warden and correctional officers at Hill Correctional Center for allegedly treating him differently because of his religion in violation of the Equal Protection Clause, interfering with his right to free exercise in violation of the First Amendment, and substantially burdening his religious practices in violation of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

§§ 2000cc–2000cc-5 (the "Act").[1] The district court entered summary judgment for the defendants on all claims. But because the court did not properly assess whether certain practices imposed a substantial burden on Njie's religion, we vacate the judgment in part and remand for further proceedings.

We recount the facts in the record in the light most favorable to Njie. *Kemp v. Liebel*, 877 F.3d 346, 350 (7th Cir. 2017). Njie is a practicing Rastafarian. His religious observance requires that his hair grow freely (causing it naturally to form into dreadlocks), that he follow dietary laws known as the Ital diet, and that he attend regular chapel services. *See Reed v. Faulkner*, 842 F.2d 960, 962 (7th Cir. 1988) (summarizing principal doctrines of Rastafarianism).

But Njie has had difficulty practicing these three tenets while in prison. First, Njie's dreadlocks have interfered with his visitation. The prison limits inmates with dreadlocks to no-contact visits (during which a glass divider separates the inmate from the visitor) because officials believe searching for contraband potentially stashed in dreadlocked hair could be dangerous for staff. (The policy now allows a hug and kiss at the beginning and end of visits.) Despite the no-contact policy, Njie and other inmates with dreadlocks—both Rastafarian and non-Rastafarian—were haphazardly permitted contact visits. In February 2012, defendant John Brand enforced the no-contact policy against Njie, although Brand acknowledged that inmates with dreadlocks had recently had contact visits. Brand then posted a memorandum reminding officers that inmates with dreadlocks could not have contact visits.

Second, Njie has not received a diet consistent with his interpretation of the Ital diet. Many Rastafarians follow an Ital diet, but individuals' dietary restrictions vary. Njie restricts himself to organic, non-canned foods without preservatives, and he avoids meat and foods containing lactose. Prison officials assigned Njie the lacto-ovo vegetarian diet, which Njie says does not comport with his beliefs. He therefore purchases much of his food from the commissary.

Third, Njie's access to chapel services and religious materials has been obstructed. Njie is a member of the Council of Elders of the Rastafarian congregation at

---

[1] Njie has two cases pending in the district court relating to his religious practices. The other case, which we dubbed "*Njie II*," was the subject of a prior appeal to this court; we vacated the dismissal of the complaint in that case. *See Njie v. Yurkovich*, 720 F. App'x 786 (7th Cir. 2018). This appeal is from the earlier-filed case, "*Njie I*."

the prison, and he helps run congregative services. Sometimes, however, the prison would not reserve time in the chapel for Rastafarian holy days or, for months at a time, the congregation's weekly service. Further, prison staff confiscated Rastafarian cassette tapes that the chaplain gave Njie after his family sent the tapes to the chaplain, and staff have rejected or lost religious items sent by outside vendors and donors.

In March 2014, Njie sued eleven defendants, claiming violations of his First, Eighth, and Fourteenth Amendment rights under 42 U.S.C. § 1983, as well as violations of the Act. He alleged that prison staff denied him contact visits because of his dreadlocks, refused to provide him Ital food, failed to offer regular Rastafarian chapel services, and confiscated religious articles from the Rastafarian congregation. He also alleged that the defendants burdened his religious practices in retaliation for his filing of various grievances. After screening the complaint, *see* 28 U.S.C. § 1915A, the district court allowed Njie to proceed on constitutional claims of retaliation and violations of his rights to free exercise and equal protection, and on statutory claims under the Act, against three defendants: Wayne Steele, John Brand, and Joseph Yurkovich. (Stephanie Dorethy eventually succeeded Yurkovich as warden.)

The defendants moved for summary judgment, and the district court granted the motion. The judge concluded that Njie had not presented sufficient evidence from which a reasonable jury could find that the defendants had substantially burdened his religious practice or discriminated or retaliated against him. Njie appeals.

Njie first argues that the denial of contact visits because of his dreadlocks violates the First and Fourteenth Amendments and the Act. But the constitutional claims fail. This court has upheld First Amendment challenges to dreadlocks restrictions "even when [wearing dreadlocks is] motivated by sincere religious belief." *Grayson v. Schuler*, 666 F.3d 450, 452 (7th Cir. 2012). And the evidence shows that inmates with dreadlocks were haphazardly permitted or denied contact visits regardless of their religious beliefs; this scattershot enforcement of the policy is inconsistent with Njie's theory that Rastafarians were singled out as a class or that he personally was targeted because of his religious beliefs. *See Sides v. City of Champaign*, 496 F.3d 820, 827 (7th Cir. 2007).

As for the statutory claim, however, the Act "robustly supports inmate religious practice," *Jones v. Carter*, 915 F.3d 1147, 1150 (7th Cir. 2019), and it prohibits prison policies that place a "substantial burden on the religious exercise of" an inmate, 42 U.S.C. § 2000cc-1. Under the Act, a substantial burden can exist even if alternatives to enduring it are available. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 720–23

(2014) (providing health insurance was substantial burden despite options to pay fine or not provide insurance); *Jones*, 915 F.3d at 1150–51 (forgoing meat was substantial burden despite being provided otherwise-compliant vegetarian diet). Here, the prison's policy forces Njie either to shave his head—"conduct that seriously violates [his] religious beliefs," *Holt*, 135 S. Ct. at 862 (quoting *Hobby Lobby*, 573 U.S. at 720) (alteration in original)—or to forgo contact visits. And the defendants did not establish that the inferior option of keeping dreadlocks and having only no-contact visits relieves the substantial burden that the policy places on Njie's religious practice.

In concluding otherwise, the district court dismissed a straw-man argument that Njie's inability to have a contact visit in February 2012 "rendered his religious exercise effectively impracticable." But Njie challenges the *policy* that prevents him from having contact visits because of his dreadlocks, not the denial of a single contact visit. And the policy is what substantially burdens Njie's religious practice. *See Hobby Lobby*, 573 U.S. at 691, 720, 726 (mandate that would cause future fines—not past harm—posed a substantial burden).

The defendants argue that even if the no-contact policy creates a substantial burden, it is justified because it is the least restrictive means of mitigating the risk that dreadlocks pose to prison safety and security. *See* 42 U.S.C. § 2000cc-1(a)(2). But they did not prove this contention by, for example, demonstrating that no comparable medium-security facilities permit contact visits for inmates with dreadlocks or that there is no safe way to search dreadlocks for contraband. The record shows that multiple inmates with dreadlocks—including Njie—have participated in contact visits at Hill without incident. Indeed, the prison presented no evidence that contraband or weapons ever had been smuggled into Hill—or anywhere—in dreadlocks. *See Holt*, 135 S. Ct. at 864. The warden's general testimony that dreadlocks "may" prevent a thorough search or pose a safety risk to the guards who search inmates' hair does not entitle the defendants to summary judgment; it leaves us with a jury question.

Next, Njie argues that the defendants unlawfully refused to furnish him with an Ital diet. The district court analyzed this claim solely under the test established in *Turner v. Safley*, 482 U.S. 78 (1987), and determined that Njie could prevail only if the defendants' refusal to provide an Ital diet was not reasonably related to a legitimate penological interest. The court then concluded, although the record is silent on the point, that providing Njie's Ital diet would adversely affect other inmates and the allocation of prison resources. It did not analyze the claim under the Act or the Equal Protection Clause.

The defendants concede that the Ital diet is part of Njie's religious practice, but they argue that Njie did not specify how the lacto-ovo vegetarian diet is inconsistent with his Ital diet. Not so. Njie's evidence sufficiently identified his dietary restrictions. His letter to the prison chaplain detailed the types of food permitted in his diet and did not list cheese, butter, or eggs—items that are common in a lacto-ovo vegetarian diet. And Njie further attested that fresh, natural foods are critical.

The defendants have evidence that a lacto-ovo vegetarian diet is consistent with Ital practices, but this serves at most to create a factual dispute as to whether it fulfills *Njie's* religious needs. If not, denying him his religious diet would substantially burden his religious practice under both the Act and the First Amendment. *See Jones*, 915 F.3d at 1150–51; *Thompson v. Holm*, 809 F.3d 376, 380 (7th Cir. 2016) ("We have repeatedly held that forcing an inmate to choose between daily nutrition and religious practice is a substantial burden."). The defendants would then have to prove that their refusal to provide an acceptable Ital diet was reasonably related to a legitimate penological interest and that the diet they chose for Njie was the least restrictive means of meeting their legitimate penological goals. *Turner*, 482 U.S. at 89–91; *Jones*, 915 F.3d at 1148–49.

As for his equal-protection claim, Njie submitted evidence that adherents to other religions receive acceptable religious diets. Therefore, the defendants would need to demonstrate a rational basis for not providing him with his own. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 637–38 (7th Cir. 2007). These analyses were passed over; therefore, summary judgment was also inappropriate on Njie's claims regarding his Ital diet. *Cf. Schlemm v. Wall*, 784 F.3d 362, 364–65 (7th Cir. 2015).

For the remainder of Njie's claims, summary judgment for the defendants was proper. First, Njie argues that the defendants retaliated against him for filing grievances by denying him contact visits and religious materials and by labeling him a snitch (placing him in danger). But the evidence to support his claim is thin. Njie submitted grievances that he filed five to seven months before the defendants denied him a contact visit and a grievance that he filed six months before his religious materials were returned to the seller. He also points to one episode in which a guard called him an "informant." Njie must show that his protected activity was "at least a motivating factor" of the defendants' adverse actions. *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). Suspicious timing is some evidence of retaliatory motive, but it is rarely sufficient, *Morgan v. SVT, LLC*, 724 F.3d 990, 998 (7th Cir. 2013), and, here, the smallest gap of five months between his protected activity and an adverse action is not close enough to carry the day, *see, e.g.*, *Silk v. Bd. of Trs.*, 795 F.3d 698, 704, 710 (7th Cir. 2015).

Nor would evidence that a non-defendant officer called Njie an "informant" permit a reasonable jury to attribute a retaliatory motive to the defendants. *See Daugherty v. Page*, 906 F.3d 606, 610–11 (7th Cir. 2018).

Second, Njie argues that the defendants violated his religious freedom by seizing, rejecting, or losing various religious objects. But the record does not contain sufficient evidence that the loss of these objects (which include cassettes, a flag, and DVDs) substantially burdened his religious practice, which precludes liability under the Act or the First Amendment. *See Holt*, 135 S. Ct. at 862 (plaintiff bears initial burden of proving implication of religious exercise for free-exercise and statutory claims). Nor does he show that other religions' adherents were able to keep unauthorized objects or receive objects from unauthorized sellers, foreclosing an equal-protection claim. *See Mutawakkil v. Huibregtse*, 735 F.3d 524, 526 (7th Cir. 2013).

Finally, Njie argues that the defendants unlawfully deprived him of Rastafarian chapel services. But Njie did not present any evidence that the defendants were personally involved in drafting the chapel schedule or that they were otherwise even aware that (at times) Rastafarian services were not scheduled with regularity. So he cannot maintain an action under § 1983 against them in their individual capacities. *Knight v. Wiseman*, 590 F.3d 458, 462–63 (7th Cir. 2009). And although injunctive relief is available under § 1983 against Dorethy in her official capacity, *see Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011), Njie's evidence shows that, more recently, Rastafarians have had weekly chapel services. Thus, injunctive relief would be inappropriate. *See City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983); *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). Because injunctive relief is the only possible remedy under the Act, that claim fails, too. *See Grayson*, 666 F.3d at 451.

The judgment is affirmed in part and vacated in part, and the case is remanded to the district court for proceedings consistent with this order.